**ZELTIG LAND DEVELOPMENT CORPORATION, Appellee,**

v.

**BAINBRIDGE TOWNSHIP BOARD OF TRUSTEES, Appellant.**

[Cite as *Zeltig Land Dev. Corp. v. Bainbridge Twp. Bd. of Trustees* (1991), 75 Ohio App.3d 302.]

Court of Appeals of Ohio,
Geauga County.

No. 90–G–1586.

Decided July 29, 1991.

*David P. Joyce,* Prosecuting Attorney, and *Forrest W. Burt,* Assistant Prosecuting Attorney, for appellant.

*Jerry A. Peterson,* for appellee.

NADER, Judge.

Plaintiff-appellee, Zeltig Land Development Corporation, is the owner of thirty acres of land which is located in the Township of Bainbridge. The land is zoned R–5A, pursuant to the Bainbridge Township Zoning Resolution. R–5A permits residential development on five-acre lots.

Appellee originally bought a thirty-five-acre parcel, with an existing house, in 1988. The stated total cost of the thirty-five acres, with the house, was $194,000. Appellee also expended $45,000 remodeling the house.

Four days after this lawsuit was filed, appellee sold the house and five of the thirty-five acres to John and Lillian Pierce for a price of $185,000. The Pierces are not a party to this action.

The testimony at trial indicated that an agreement existed between the appellee and the Pierces. If appellee was successful in getting the existing R–5A zoning changed, the Pierces would return to appellee two of the acres they had purchased from appellee. No written evidence of this agreement was introduced at trial; no objection was made to the oral testimony concerning the agreement.

The subject property is located on, and bounded on the northeast side by, Chagrin Road. It is a part of a one-hundred-eighty-eight-acre triangle of land which is bounded on the west by Cats Den Road and on the south by Country Lane. While the entire triangular area of property is zoned R–5A, about twenty-five of approximately forty-nine lots on the triangle are two acres or less, *i.e.,* are nonconforming lot sizes.

Appellee proposed a subdivision of two-acre lots, which proposal was denied by the Bainbridge Board of Township Trustees, appellant. Appellee then instituted a declaratory judgment action, seeking to have the existing zoning declared unconstitutional.

The trial court found that "there is an ample ground water supply to develop the property and that there would not be any adverse effects upon neighboring water wells."

Further, the court found that the land in question is not suitable for the installation of on-site septic systems because bedrock is so close to the surface. The absence of topsoil would render ineffective the leach beds which are necessary for septic systems. As a result, the area's groundwater would be polluted if septic systems were used. Consequently, any residential development of the property would necessitate central sewers. Appellee proposes to construct a trunk line along Chagrin Road and tie into the McFarland treatment plant. The cost of the sewer, the trial court found, would render development of the subject property unprofitable if the lot size remained five acres.

The trial court also expressly found that if appellee sold its thirty acres it would probably recoup its entire investment.

The R–5A district permits the following uses without the property owner first obtaining a zoning certificate: agricultural, township government buildings, oil and gas wells, public utility and railroad uses, farm markets, or roadside stands. Upon obtaining a zoning certificate, the following uses are also permitted: single-family dwellings, family home residential facilities, public schools and type-B family day-care homes as defined by R.C. 5104.054. Finally, certain conditional uses are permitted: churches, cluster development residences, government buildings, private and parochial schools, publicly owned parks, playgrounds or other recreational facilities, cemeteries, adult family homes and tennis clubs.

The only use for which appellee presented evidence of economic feasibility was single-family residential use. Appellant presented no evidence of the economic feasibility of other uses. Appellant's only evidence of the governmental purpose for which the five-acre lot size was created was the community's desire to maintain a rural atmosphere.

Appellant assigns the following errors:

"1. The trial court erred in failing to dismiss appellee's complaint on the basis that appellee had shown no right to relief.

"2. The trial court erred in ruling that the Bainbridge Township Zoning resolution as applied to appellee's land is unconstitutional."

Appellant's first assignment of error is directed at appellee's standing to challenge the zoning of property which appellee does not presently own.

■ Initially, it should be noted that only a person with a present possessory interest in a parcel of property, or that person's duly authorized agent, may

challenge the constitutionality of the existing zoning of that parcel. Cf. *State ex rel. Multiplex, Inc. v. S. Euclid* (1973), 36 Ohio St.2d 167, 65 O.O.2d 383, 304 N.E.2d 906. Only the present possessor is limited by the zoning; only the present possessor can be harmed by restrictions placed on the property as a result of the zoning. Therefore, only the present possessor has standing to sue, or authorize a suit to be brought.

■ When the instant suit was filed, appellee was the owner of all the property named in the complaint. At that time appellee clearly had standing to challenge the township zoning as it applied to its own property. When appellee sold the property, the challenge to the zoning of the sold property arguably became moot. Any injury to appellee caused by the existing zoning disappeared.

Appellee offered evidence, however, that it retained a contingent interest in the property. More to the point, appellee introduced testimony that the Pierces had, by contract, assented to appellee's pursuit of this lawsuit to change the zoning of their property.

Appellant never raised the issue of appellee's failure to join an indispensable party to the suit. See Civ.R. 19. Appellant never objected to the testimonial evidence of appellee's authority.[1] Appellant did not introduce evidence to rebut appellee's assertion that it had the Pierces' authority to maintain this suit. The only evidence before the trial court indicated that appellee had a contingent property interest and was acting under authority granted by contract with the Pierces. Thus, appellee had standing to maintain the suit with respect to those two of the five acres presently owned by the Pierces which would be returned to appellee. The trial court did not err in so holding.

We hasten to add that the Pierces are not bound by this judgment in any way. We hold merely that the township cannot now avail itself of their absence.

Appellant's first assignment is without merit.

Appellant's second assignment of error challenges the propriety of the trial court's judgment declaring the present zoning of appellee's property unconstitutional.

Zoning regulations are presumably valid and constitutional. *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 95, 20 O.O.3d 88, 89, 420 N.E.2d 103, 105. The party challenging the constitutionality of a zoning regulation bears the burden, at all stages of the litigation, of demonstrating the unconstitutionality

---

**1.** Possible objections might include best evidence, hearsay, a violation of the statute of frauds (land contract), and the merger of land contracts into their subsequent deeds.

or unreasonableness of the regulation. *Mayfield–Dorsh, Inc. v. South Euclid* (1981), 68 Ohio St.2d 156, 157, 22 O.O.3d 388, 429 N.E.2d 159, 160.

■ In order to invalidate a zoning ordinance, the challenging parties must demonstrate, beyond fair debate, that (1) the zoning classification denies them the economically viable use of their land and (2) it does not substantially advance a legitimate interest in the health, safety, or welfare of the community. *Columbia Oldsmobile, Inc. v. Montgomery* (1990), 56 Ohio St.3d 60, 62, 564 N.E.2d 455, 457, *Ketchel v. Bainbridge Twp.* (1990), 52 Ohio St.3d 239, 243, 557 N.E.2d 779, 782, *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357.

Thus, a two-part analysis is conducted to determine the constitutional validity of the zoning regulation. First, there must be proof that the regulation denies appellee an economically feasible use of its property. *Ketchel, supra,* 52 Ohio St.3d at 245, 557 N.E.2d at 784. Next, there must be proof that the regulation does not substantially advance a legitimate interest of the township in the health, safety or welfare of its community.

■ The first hurdle that a plaintiff challenging the constitutionality of a zoning regulation must clear is "economic infeasibility." Ordinarily, a zoning regulation is not confiscatory so long as the owner is not deprived of the reasonable use of his property. *Columbia Oldsmobile, Inc., supra; Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St.3d 184, 527 N.E.2d 825, syllabus. It is also well settled that a zoning regulation which deprives an owner of all uses except those which are highly improbable or practically impossible under the circumstances is impermissibly restrictive. *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 62, 564 N.E.2d at 457; *Valley Auto Lease, supra,* 38 Ohio St.3d at 186, 527 N.E.2d at 827; *Negin v. Mentor Bd. of Bldg. & Zoning Appeals* (1982), 69 Ohio St.2d 492, 23 O.O.3d 423, 433 N.E.2d 165; *Superior Uptown, Inc. v. Cleveland* (1974), 39 Ohio St.2d 36, 68 O.O.2d 21, 313 N.E.2d 820. The trial court found, and we agree, that the appellant's five-acre lot size requirement, as it is applied to appellee's land, deprives appellee of the reasonable use of its land.

The parties agree that single-family residential use is a reasonable use for the property. As noted above, the property is located in the midst of a single-family residential district. The only debate concerns the *lot size* upon which the residences must be built.

■ As a general rule, townships have the power, under R.C. 519.02, to set minimum lot sizes. *Ketchel, supra.* This permitted technique of regulating population density is not without limitation, however. Where the imposition

of a large minimum lot size would work an *extraordinary* burden upon a land owner, the regulation, as applied, may be subject to constitutional attack.

In this case, the undisputed evidence shows that appellee's property has uniformly shallow bedrock. The effect of this condition is to prohibit the construction of homes which are serviced by septic systems. The only way the property may be used for single-family residences is to install central sewers. If the lot size remains at the five-acre minimum, the cost, per residence, of the sewer would make development economically infeasible.

It is misleading to say that single-family residences are a "permitted use" of the land in this case. The condition of the land will not "permit" such use. Consequently, we uphold the trial court's finding that appellee met its burden of proof as to the economic nonviability of using the property as it is presently zoned.

■ We now must determine whether there is a legitimate government interest which is advanced by the five-acre lot size.

The trial court found:

"With respect to the land in question, the present zoning ordinance does not advance any legitimate government interest in that it does not bear any relationship to the public health, safety, welfare and morals. There is simply no rational basis for this land to remain zoned for five acre lots. The issue is not fairly debatable. At it affects plaintiff's land the ordinance is unconstitutional."

■ As an initial matter, a local government is not prohibited from introducing evidence that it desire to maintain low-density development. This goal is permissible to protect the community's citizens from the "ill effects of urbanization." *Agins v. Tiburon* (1980), 447 U.S. 255, 261, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106, 112.

"Such governmental purposes have long been recognized as legitimate. See *Penn Central Transp. Co. v. New York*, [ (1978) ], *supra*, 438 U.S. [104], at 129 [98 S.Ct. 2646, 2662, 57 L.Ed.2d 631, 651]. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9 [94 S.Ct. 1536, 1541, 39 L.Ed.2d 797, 804] (1974); *Euclid v. Ambler Co.* [ (1926) ] *supra*, 272 U.S. [365], at 394–395 [47 S.Ct. 114, 120–121, 71 L.Ed. 303, 313–314]." *Id.*

R.C. 519.02 expressly permits townships to regulate "the density of population," provided that such regulation is "[f]or the purpose of promoting the public health, safety, and morals."

The instant case is immediately distinguishable from the *Ketchel* case, noted above. In *Ketchel*, the township put forward substantial evidence of the impact of residential development upon the township's water supply.

Such evidence is completely absent in the case at hand. In fact, the trial court expressly found that the township's water supply would not be impaired if residences were built on two-acre lots.[2] The record is devoid of evidence of how the five-acre lot size limitation furthers the "health, safety and morals" of the community.

We hold, therefore, that the trial court correctly found that there is no legitimate governmental interest which supports the five-acre lot size requirement for appellee's land.

Therefore, for the reasons set forth in this opinion, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs separately.

CHRISTLEY, J., concurs in judgment only and concurs in the concurring opinion.

FORD, Presiding Judge, concurring.

While I concur with the judgment and analysis of the majority, I feel obliged to amplify the distinctions between the facts presented by the instant case and those before the Ohio Supreme Court in *Ketchel v. Bainbridge Twp.* (1990), 52 Ohio St.3d 239, 557 N.E.2d 779.

In *Ketchel,* the Ohio Supreme Court concluded that landowners did not meet their burden of proof in challenging the constitutionality of the relevant *use* restriction because they did not demonstrate that *all possible uses* were economically infeasible. *Id.* at 245, 557 N.E.2d at 784.

In the instant action, the majority correctly holds that the rule of *Ketchel* does not preclude a successful challenge to the five-acre *area* limitation at issue by focusing on the fact that "[i]f the lot size remains at the five-acre minimum, the cost, per residence, of the sewer would make development economically infeasible." While this statement is valid, several other factors render the rule of *Ketchel* inapplicable to the case *sub judice.*

First, in *Ketchel* the court concluded that the available groundwater supply would be inadequate to support the proposed higher density development, and

---

2. We note, parenthetically, that the township does not have a two-acre lot zone classification. The trial court's judgment entry apparently endorses appellee's proposed two-acre lot development; this is beyond the scope of the trial court's authority. At this time, there has been a declaration of the unconstitutionality of the present zoning. It is now incumbent upon the township to remove restrictions on the property, and it may do so in accordance with its existing classifications. See *Union Oil Co. v. Worthington* (1980), 62 Ohio St.2d 263, 16 O.O.3d 315, 405 N.E.2d 277.

that the proposed development would strain the available water supply to the surrounding area. This finding was the fundamental basis for the failure of the landowners' constitutional challenge.

As noted in *Ketchel,* a zoning regulation may be invalidated on constitutional grounds if the landowner demonstrates, beyond a fair debate, that (1) the zoning regulation denies him an economically viable use of his property, *and* (2) *the zoning regulation does not substantially advance a legitimate interest in health, safety, or welfare of the community. Id.* at 243, 557 N.E.2d at 782. Since the evidence established the existence of an inadequate water supply, the use restriction in *Ketchel* substantially advanced the township's legitimate interest in guarding against water shortages. Accordingly, the zoning regulation would withstand a constitutional attack *whether or not* it denied the landowners an economically viable use of their property.

Conversely, in the instant case there was no evidence that the appellee's proposed two-acre development would strain the available water supply. Accordingly, the case *sub judice* rests solely on the issue of whether the zoning regulation denies appellee the economically viable use of its property.

Second, the property in *Ketchel* had no special or unique characteristics distinguishing it from other residentially zoned properties. Further there was no finding that all single-family development was infeasible. On the other hand, the soil conditions on the subject property in the instant case were so severe as to render on-site septic systems impossible to install. Accordingly, unlike *Ketchel, all* single-family development was economically infeasible.

Third, *Ketchel* is inapplicable because the landowners in that case attempted to challenge a use restriction rather than an area restriction. In *Ketchel,* approval was sought for a use which was expressly prohibited under the zoning classification, while appellee in the instant case sought approval to change the area restrictions for an already-permitted use. This distinction is significant, as appellee need only demonstrate that his permitted use of the property was economically infeasible under the five-acre area restrictions.

CHRISTLEY, J., concurs in the foregoing opinion.