QUINLAN, Appellant,

v.

STATE OF OHIO DEPARTMENT OF COMMERCE, DIVISION
OF CONSUMER FINANCE, Appellee.

[Cite as *Quinlan v. Ohio Dept. of Commerce, Div. of Consumer
Finance* (1996), 112 Ohio App.3d 113.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE08–1070.

Decided June 27, 1996.

*W. Kenneth Zuk,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Samuel H. Simon,* Assistant Attorney General, for appellee.

DESHLER, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, the Ohio Department of Commerce, Division of Consumer Finance, imposing civil penalties upon appellant, Curtiss A. Quinlan, for violations of statutes and rules governing his Class A private investigator's license.

The basis for this appeal is found in two administrative proceedings initiated against appellant by the division for alleged violations of sections of the Revised Code and Ohio Administrative Code governing private investigators. The two separate proceedings against appellant by the division were eventually addressed in a single order issued by the division dated June 8, 1994, ordering a civil penalty of $3,500 but waiving all but $1,000 of it. The three bases given in the division's order were, first, the failure of appellant to timely return identification cards of terminated employees as required under Ohio Adm.Code 1301:4-5-11 and report their terminations on the appropriate form; second, the failure of appellant to register certain employees as private investigators with the division; and, third, the failure of appellant, on three occasions, to permit division investigators to have access to his corporate business records.

Appellant subsequently filed an appeal under R.C. 119.12 from the order of the division in the Franklin County Court of Common Pleas, which, on April 29, 1995, issued a decision affirming the final order of the division as being supported by reliable, probative and substantial evidence and in accordance with law. Appellant has timely appealed and brings the following six assignments of error:

"First Assignment of Error

"The division and lower court erred in finding that the licensee violated Administrative Rule 1301:4-5-11.

"Second Assignment of Error

"The lower court and the Division of Licensing erred in their interpretation of Ohio Revised Code 4749.01(H)(3).

"Third Assignment of Error

"The lower court erred in refusing to recognize that the issues concerning licensing requirements are res judicata.

"Fourth Assignment of Error

"The lower court erred in refusing to recognize the conflict in laws between Ohio Revised Code 4749.13(B)(3), Ohio Revised Code 149.43, Ohio Administrative Code 1301:4-[5-]13, and Ohio Revised Code [sic] 1301-4-5-17 and further erred in refusing to resolve the conflicts in favor of the licensee.

"Fifth Assignment of Error

"The court erred in refusing to acknowledge that Fifth Amendment protections apply to individual licensees.

"Sixth Assignment of Error

"The lower court erred in failing to recognize that the remedy for failure to honor a subpoena is contempt of court, not an administrative procedure or penalty."

■ In an appeal involving an administrative decision pursuant to R.C. 119.12, the standard of review for an appellate court is whether the court of common pleas abused its discretion in finding that the administrative order was or was not supported by reliable, probative and substantial evidence and in accordance with law. An appellate court does not determine the weight given to the evidence heard before an agency in proceedings on appeal in a lower court. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 590 N.E.2d 1240.

"The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.

■ Appellant's first assignment of error asserts that the court of common pleas erred in finding that the division's determination that appellant had failed to inform the division of the termination of two employees was supported by reliable, probative and substantial evidence and in accordance with law. Ohio Adm.Code 1301:4–5–11(C) states:

"Within ten business days after the termination of a registrant's employment, the licensee shall notify the department of commerce on forms provided by the department of such termination, and submit the registrant's identification card for cancellation."

The district hearing officer found that appellant had violated the above provision by failing to notify the division within ten days of the termination of two employees. With respect to one employee, Karen Blevens, appellant asserts that the employee refused to return her identification card to appellant, thereby rendering it impossible for him to return it to the Division of Licensing. This assertion is contradicted by appellant's own testimony that he could not remember whether he had ever received Bleven's identification card. Furthermore, appellant concededly never mailed the statutorily required notice of termination on the division's own form to give notice of her termination.

With respect to the second employee, Richard Smith, appellant claims that he submitted the required termination form but that the division misplaced it. This raises a simple conflict in the evidence over whether the termination form was ever received by the division, a determination which was properly left to the trier of fact and not disturbed by the court of common pleas upon appeal. We

therefore agree with the court of common pleas that there was reliable, probative and substantial evidence to support the division's determination in this matter, and that its determination was in accordance with law. We find no abuse of discretion on the part of the court of common pleas in affirming on this issue. Appellant's first assignment of error is accordingly overruled.

█ Appellant's second assignment of error asserts that the division erred in failing to find that certain employees hired by appellant were functioning as clerks in a credit reporting operation and were not required to be licensed as private investigators. This is based upon appellant's alleged separation of his business into two locations with the investigative work performed at one location in Kentucky and the credit report work being performed at a location in Ohio. The hearing examiner agreed with appellant that the business functions of the separate credit reporting organization comported with the licensing requirements, but the division overruled this conclusion and found that the activities conducted by employees at the credit report office constituted the "business of private investigation" as defined in R.C. 4749.01(B):

" 'Business of private investigation' means, except when performed by one excluded under division (H) of this section, the conducting, for hire, in person or through a partner or employees, of any investigation relevant to any crime or wrong done or threatened, or to obtain information on the identity, habits, conduct, movements, whereabouts, affiliations, transactions, reputation, credibility, or character of any person, or to locate and recover lost or stolen property, or to determine the cause of or responsibility for any libel or slander, or any fire, accident, or damage to property, or to secure evidence for use in any legislative, administrative, or judicial investigation or proceeding."

At issue is the scope of regulation of private investigatory activities by the state, as limited by the provisions of the Fair Credit Reporting Act ("FCRA"), Section 1681 *et. seq.*, Title 15, U.S.Code. This federal preemption is reflected in R.C. 4749.01(H)(3), providing as follows:

"(H) 'Private investigator,' 'business of private investigation,' 'security guard provider,' and 'business of security services' do not include:
" * * *

"(3) A consumer reporting agency, as defined in the 'Fair Credit Reporting Act,' 84 Stat. 1128, 15 U.S.C.A. 1681a, as amended, provided that the consumer reporting agency is in compliance with the requirements of that act and that the agency's activities are confined to any of the following[.]"

An employee performing the functions defined under the FCRA is therefore exempt from the licensing requirements of R.C. Chapter 4749. The activities governed under the FCRA include compiling consumer reports to determine a

consumer's eligibility for credit, insurance, governmental licenses, employment purposes, or for business transactions involving a consumer. Section 1681a and 1681b. Appellee has made numerous references to the record which demonstrate that it is replete with evidence that appellant's unlicensed "credit clerks" were performing functions not within the purview of the FCRA and, therefore, were not eligible for the licensing exemption granted by R.C. 4749.01(H)(3). Appellant's own testimony established that the activities were referred to as subrogation work for insurance companies and involved investigating insurance claims as well as other activities defined as "the business of private investigation" under R.C. 4749.01(B).

Because the record before this court contains ample evidence with which the division could support its conclusion that the unlicensed "credit clerks" employed by appellant were in fact performing investigative services, we find that the court of common pleas did not err in concluding that the decision of the division was based upon reliable, probative and substantial evidence and in accordance with law. Appellant's second assignment of error is accordingly overruled.

Appellant's third assignment of error asserts that the court of common pleas erred in not finding that the issue of exemption under R.C. 4749.13(H)(3), also raised in appellant's second assignment of error, was *res judicata* based upon prior litigation in several administrative decisions, and one Hamilton County Court of Common Pleas decision involving workers' compensation claims brought by appellant's former employees. The more precise doctrine applicable in this case is that of collateral estoppel, a term which refers to the doctrine of issue preclusion. See, generally, *Columbus v. Triplett* (1993), 91 Ohio App.3d 239, 243, 632 N.E.2d 550, 552. Collateral estoppel precludes the relitigation of an issue that was litigated and decided in a prior action. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437, 254 N.E.2d 10, 13. In order for collateral estoppel to apply, the issue addressed must have been actually and directly litigated in the prior action and must have been passed upon and determined by a court or administrative tribunal of competent jurisdiction, and there must be mutuality of parties. *Id.* In the case before us, mutuality of parties does not exist, because the prior administrative and judicial actions relied upon by appellant were litigated between appellant and his former employees; the parties in the present action are appellant and the Department of Commerce, Division of Consumer Finance. In the absence of identical parties or parties in privity, the doctrine of collateral estoppel does not apply, and any determination made in workers' compensation proceedings regarding the application of the exemption does not preclude a subsequent, conflicting determination in the present action. Appellant's third assignment of error is without merit and is therefore overruled.

■ Appellant's fourth assignment of error addresses the division's finding that he knowingly violated Ohio Adm.Code 1301:4–5–13, which provides as follows:

"Each licensee shall keep a true and correct record in the English language of all of the business transactions in his office relevant to enforcement of Chapter 4749. of the Revised Code. Such records shall be available at all reasonable hours for inspection by the department of commerce."

Appellant argues that because Ohio's Public Records Act, codified at R.C. 149.43, provides for availability of public records and contains no exception for materials which would be produced by a private investigator under Ohio Adm. Code 1301:4–5–13, any confidential client information released to a division investigator would become available for public inspection. Thus, an investigator complying with the business records provisions of Ohio Adm.Code 1301:4–5–13 would run the risk of violating the confidentiality requirements of R.C. 4749.13 and Ohio Adm.Code 1301:4–5–17, stating respectively as follows:

"(B) No class A, B, or C licensee, or registered employee of a class A, B, or C licensee shall:

" * * *

"(3) Divulge any information acquired from or for a client to persons other than the client or his authorized agent without express authorization to do so or unless required by law."

"Any licensee or registered employee may divulge to any law enforcement officer or prosecuting attorney, or his representative, any information he may acquire as to any criminal offense, but he shall not divulge to any other person, except as he may be required by law so to do, any information acquired by him except at the direction of the employer or client for whom the information was obtained."

It appears that the records which appellant refused to produce documented the services provided by appellant to twelve insurance companies with which he had entered into investigation contracts. Appellant apparently allowed a division investigator to inspect substantially the same files on an earlier occasion, but requested at that time that the investigator make only notes rather than copies, because appellant's contract with his clients contained a nondisclosure clause. As the investigation progressed, appellant continued to be concerned, apart from contractual considerations, about his responsibility under the applicable confidentiality statutes and regulations. Appellant's position as communicated to division

investigators was that the potential for exposure of sensitive client information through the Public Records Act required him to safeguard his client's information by carefully preserving confidentiality of any client files, or obtaining an appropriate release from the client before releasing client files to regulators.

The division appears to have been content to merely examine, rather than obtain copies of, the relevant files until March 1991, when a subpoena was issued for certain client files kept by appellant. The state's position upon appeal is that Ohio Adm.Code 1301:4–5–13 permits the state complete access to private investigators' client files in derogation of any confidentiality restrictions contained in the Revised Code or Administrative Code, because the two above-cited confidentiality provisions contain the caveat "unless required by law," and Ohio Adm.Code 1301:4–5–13 presents such a legal requirement.

While we agree with the division that the business records requirement of Ohio Adm.Code 1301:4–5–13 must be read *in pari materia* with confidentiality provisions of Ohio Adm.Code 1301:4–5–17 and R.C. 4749.13(B)(3), *"in pari materia"* does not constitute a license to entirely disregard the confidentiality considerations raised by these provisions. The division, in pursuit of its regulatory function, should be allowed reasonably unfettered access to the licensee's own records pertaining to the conduct of his business, such as payroll records, employee records, and the business's own financial accounting. A distinction must be made, however, between this class of records and those which were requested in this case, consisting of the confidential files of appellant's clients.

The phrase "unless required by law" should not be taken to provide unrestricted authority for the division to expose the client files of a licensee to public scrutiny by obtaining copies which would then become subject to the Public Records Act. In each instance, a balance must be struck between the confidentiality interests of a private investigator's clients and the division's interest in pursuing effective regulation of the private investigation industry. Merely establishing that an investigation of a potential violation of some aspect of R.C. Chapter 4749 is in progress does not establish an absolute need for confidential client records, absent a more particularized inquiry into the nature of the statutory or regulatory infraction claimed, and the potential utility of the client file in establishing the existence of such an infraction.

In the case before us, the record does not permit us to establish whether the client files requested and eventually obtained from appellant were necessary to support the allegations of failure to license investigatory employees; such files were certainly not necessary in order to establish the failure to give the division notice of employee termination. In addition, however, we note that appellant was

originally charged with "knowingly making a false report with respect to any matter with which he is employed," in violation of R.C. 4749.13(B)(2). Although this charge does not appear to have been a basis for civil sanctions and is not addressed in the division's order, it certainly is conceivable that the client files requested by the division were originally sought to substantiate the content of the reports prepared by appellant for various clients and ultimately the veracity of those reports.

We therefore sustain appellant's fourth assignment of error to the extent that, upon remand, the division shall reconsider the necessity of the client files requested in the context of the investigation and charges against appellant, the confidentiality interest of the clients in question and the availability of alternative means of establishing the substance and validity of charges against appellant. The division should then revise or reaffirm its finding on this issue, as may be warranted by the above factors.

■ Appellant's fifth assignment of error asserts that appellant's Fifth Amendment rights, specifically his privilege against self-incrimination, applied to protect him from furnishing potentially incriminating documents to the division. This assertion is without merit for two reasons. First, since the records sought by the division were corporate records, and appellant refused them in his corporate capacity, the Fifth Amendment does not apply. "Since the Fifth Amendment right is a personal right, an individual may not claim such privilege on behalf of a collective entity or organization of which he may be a part. Neither a partnership, a corporation, nor any other collective entity is shielded by the Fifth Amendment from the compelled production of an organization's records." *Cincinnati v. Bautenheimer* (1992), 63 Ohio St.3d 260, 264, 586 N.E.2d 1065, 1068, fn. 2.

■ Furthermore, although the protection of the Fifth Amendment applies in any type of proceeding, whether civil, criminal, administrative, investigatory or adjudicatory, *Maness v. Meyers* (1975), 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574, 585, it applies only to evidence which might directly support a criminal conviction, or which would furnish a "link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." *Id.* at 461, 95 S.Ct. at 592, 42 L.Ed.2d at 585. In the instant action, appellant was faced with civil penalties in the form of the loss of his license or a fine. Appellant has not set forth, nor does the record indicate, that any criminal action against appellant was in prospect. Appellant has therefore not raised a Fifth Amendment self-

incrimination issue, even if the records in question were considered to be his, rather than belonging to the corporation.

For the above two reasons, we find that appellant's Fifth Amendment arguments are without merit. Appellant's fifth assignment of error is accordingly overruled.

 Appellant's sixth assignment of error asserts that the court of common pleas erred when it failed to acknowledge that the proper remedy for appellant's failure to honor a subpoena would have been a contempt proceeding, rather than the administrative charges to which he was subjected. This issue was not raised before the court of common pleas and is therefore not properly before us upon appeal. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001. Appellant's sixth assignment of error is overruled.

In accordance with the foregoing, appellant's first, second, third, fifth and sixth assignments of error are overruled. Appellant's fourth assignment of error is sustained to the limited extent set forth in our discussion of that assignment of error, and this matter is remanded to the Franklin County Court of Common Pleas to be remanded to the Department of Commerce, Division of Finance, for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETREE, P.J., and REILLY, J., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.