[Cite as *Lahoud v. Tri-Monex, Inc.*, 2011-Ohio-4120.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96118**

## JIHAD LAHOUD, ET AL.

PLAINTIFFS-APPELLEES

vs.

## TRI-MONEX, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-702167

**BEFORE:** Rocco, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 18, 2011

**ATTORNEY FOR APPELLANTS**

Aleksandar Rakic
1787 Pearl Road
Brunswick, Ohio    44212

**ATTORNEYS FOR APPELLEES**

Michael J. Downing
75 Public Square, Suite 920
Cleveland, Ohio 44113

Tania T. Nemer
McGinty, Hilow & Spellacy Co., LPA
1300 The Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1} Defendants-appellants Tri-Monex, Inc., Hanan Khoury (hereinafter referred to by her first name), Kameel Khoury, and Victor Jada (hereinafter referred to by his first name) appeal from the trial court order that found Hanan to be in contempt of court for refusing to answer certain

questions and produce certain documents at a deposition conducted by plaintiffs-appellees Jihad Lahoud, Ibrahim Hamame, and Hessam Lahoud.

{¶ 2} Appellants present three assignments of error in which they argue the trial court's order should be reversed because: 1) the order impermissibly required Hanan to incriminate herself; 2) the trial court did not first review the documents to determine whether they were incriminating before setting forth the purge condition; and 3) the trial court did not first determine whether Hanan could obtain some of the documents appellees requested before finding her in contempt.

{¶ 3} Upon a review of the record, this court disagrees. The trial court's order, consequently, is affirmed.

{¶ 4} The record reflects appellees filed a complaint against appellants and two other named defendants[1] in August 2009 that alleged five causes of action, viz., illegal sales of securities, violation of Ohio's "Corrupt Activities Act" (the "CAA"),[2] fraud, conversion, and civil conspiracy against the individual appellants, and "punitive damages." The complaint stated that Hanan was "owner/president of Tri-Monex." In November 2009, appellants

---

[1] Defendants in the underlying action, George T. George and James T. George, are not part of this appeal.

[2] R.C. 2923.31 et seq.

filed a joint answer denying the pertinent allegations and raising several affirmative defenses.

{¶ 5} On June 3, 2010, appellees filed a motion seeking an order finding appellants Hanan and Victor in contempt for failing to appear at a scheduled deposition. Appellees asserted that appellants sought to reschedule the deposition twice previously, and requested an additional order from the court "compelling their appearance to answer questions under oath."

{¶ 6} The court held a hearing on appellees' motion that same day. At the outset, the court noted that the parties had agreed to a monetary settlement, whereby Hanan and her sister would pay appellees "$50,000 by June 25th"and then a "balance of the amount due, which is $750,000, * * * by September 1st."

{¶ 7} The trial court warned the defendants responsible for the payment to appellees that it would "put an order on" with respect to the settlement's terms, and that "failure to comply with it can result in contempt proceedings which includes * * * jail, if it is direct contempt. And, you could end up staying in jail till you pay" the settlement.

{¶ 8} On June 7, 2010, the trial court issued a journal entry that stated as follows:

**{¶ 9}** "Defendant Hahan (sic) Khoury is to pay as a settlement of this matter $50,000.00 by 6/25/10 to plaintiffs and a balance of $750,000.00 by 9/1/10. Failure to comply will result in a contempt proceeding. Parties to return [to court] on 9/9/10 at 2:00 p.m."

**{¶ 10}** On September 9, 2010, appellees filed a motion for an order compelling discovery. Appellees asserted they scheduled a deposition for appellants Hanan and Victor on September 14, 2010, and since prior attempts to depose them had been unsuccessful, they sought the court's assistance.

**{¶ 11}** Contemporaneously, appellees also filed a motion to hold the same two appellants "in contempt of court for failure to comply with the court's order of June 7, 2010." Appellees asserted Hanan and Victor never made the second payment due on the settlement.

**{¶ 12}** After the parties filed memoranda in support of their respective positions on the issue, the court issued a journal entry that scheduled "the depositions to be held on 11/3/10 at 1:00 p.m." in the court's jury room. When the depositions proceeded on that day, appellees eventually called upon the trial court "to discuss the propriety of * * * objections" appellants were making as to some of the questions posed by appellees.

**{¶ 13}** In particular, appellants declined to either answer any questions about either the location where the money appellees gave to Tri-Monex was

deposited, or whether Tri-Monex itself had any bank accounts that received those funds.  Appellants asserted the matters were protected by the Fifth Amendment.

{¶ 14} The trial court wanted the record to "show that we've been here a number of times with regards to this matter * * * .

{¶ 15} " * * * [O]n the 9th of September, * * * the money hadn't been paid back.   And [Hanan] said it was gonna' come within a few days.

{¶ 16} "I believe we came back * * * maybe the 28th of October, and she said that the money was in * * * Toronto, Canada, and she would have it back immediately.

{¶ 17} " * * *

{¶ 18} "And [on June 3, 2010,] I did tell Miss Khoury that if, in fact, she did not pay she may be held in * * * contempt of Court. * * * "

{¶ 19} At that point, the trial court asked appellees which questions Hanan and Victor had refused to answer.  Counsel for appellees stated that his clients each had "deposited" certain sums "with Tri-Monex, and were issued promissory

{¶ 20} notes, ostensibly signed by Miss Khoury," and appellees wanted to know "where those deposits were made, what bank, and what records does she have as an officer of Tri-Monex."

{¶ 21} The trial court stated that since Hanan already had acknowledged she had appellees' money, and "where it was located and that she was gonna' pay it back," the court did not "see where this would be incriminating by answering where she deposited in further criminal proceedings that she would be protected by her right, her Fifth Amendment rights, because she's already said she had the money * * * ."  On that basis, the court ordered Hanan to answer the question as to where she deposited the money, further stating that failure to obey the order "may result in contempt proceedings."

{¶ 22} After appellants' counsel objected, appellees' counsel interjected that they also wanted to see the documents that had not been produced.  In answer to the court's question, appellees' counsel stated that the documents had been "subpoenaed [on] two separate occasions"; the listed documents included "corporate records of Tri-Monex, bank statements, copies of all brokerage account statements or other investment accounts and copies of personal financial tax returns."

{¶ 23} According to appellees' counsel, although Hanan "admitted that Tri-Monex did have a bank account," she invoked her Fifth Amendment right and

{¶ 24} "refused to give the account number or answer any other questions concerning the deposit of plaintiffs' funds in those accounts." The trial court instructed Hanan to answer appellees' questions, but her attorney, on her behalf, invoked the Fifth Amendment.

{¶ 25} The trial court stated its belief that the matter had nothing to do with the Fifth Amendment, because Hanan had "already appeared in court saying she had the money. * * * [M]oney was received by Tri-Monex * * * inasmuch as she is an officer of Tri-Monex," the court reiterated its order to answer and to provide the information appellees requested or be held in contempt.

{¶ 26} When Hanan's attorney once again stated that his client declined to do so, the trial court found her in contempt of court and stated it would impose a fine of a thousand dollars a day until she provided the information to appellees. The court set a date "to come back in two weeks to pay the amount of money that is due at that point," and subsequently requested appellees to "prepare the order" concerning the hearing.

{¶ 27} The next entry that appears on the court's docket, dated November 5, 2010, indicates a "contempt hearing [wa]s set" for November 19, 2010. On November 8, 2010, however, the trial court issued a journal entry that stated

{¶ 28} in relevant part as follows:

{¶ 29} "This matter came on for hearing on November 3, 2010. During a

{¶ 30} deposition conducted this day * * * , [Hanan] was asked to answer questions concerning the deposit of certain funds belonging to [appellees] in this case.

{¶ 31} "[Appellees'] counsel also requested * * * certain documents listed * * * in the notice of deposition. [Hanan], having refused to answer said questions, claiming Fifth Amendment protection, or provide the requested documents, after being ordered to do so by the judge in open court, is hereby found to be in Contempt of Court and is assessed a fine of One Thousand Dollars ($1,000.00) per day for each day until she provides * * * the answers * * * , and * * * documents."

{¶ 32} Appellants filed a timely appeal of that order. They present the following assignments of error.

{¶ 33} **"I.   The trial court erred in denying Appellants' right to assert their fundamental right against self-incrimination in violation of the Fifth Amendment by requiring them to answer all questions posed by Appellees.**

**{¶ 34}** "**II.   The trial court erred in failing to make a factual determination, before finding that Appellants did not have a Fifth Amendment right, as to whether answering the questions and discovery requests would have been personal and testimonial and would have conceded certain facts, and, if so, whether any of the concessions would have been self-incriminating.**

**{¶ 35}** "**III.   The trial court erred in finding that Appellants did not have a Fifth Amendment right where Appellants' production of documents would have been personal, testimonial and self-incriminating.**"

**{¶ 36}** Appellants argue the trial court's contempt order was improper because: 1) the order impermissibly required Hanan to incriminate herself; 2) the trial court did not first review the documents to determine whether they were incriminating before setting forth the purge condition; and 3) the trial court did not first determine whether Hanan could obtain some of the documents appellees requested before finding her in contempt.   This court disagrees that the trial court erred in making its contempt finding.

**{¶ 37}** Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority.   *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691.   This court cannot reverse a finding of contempt by a trial

court unless that court abused its discretion. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249; *Offenberg v. Offenberg*, Cuyahoga App. Nos.

**{¶ 38}** 78885, 78886, 79425, and 79426, 2003-Ohio-269, ¶73. In applying this standard of review, an appellate court is not free to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

**{¶ 39}** In *Strauss v. Strauss*, Cuyahoga App. No. 94129, 2010-Ohio-6166, ¶9-10, this court recently distinguished direct and indirect contempt as follows:

**{¶ 40}** "A court may find the offending party in contempt for either direct or indirect actions that constitute *disobedience to an order*. *Pirtle v. Pirtle*, 2nd Dist. No. 18613, 2001-Ohio-1539. While a direct contempt occurs *within the court's presence or with the court's personal knowledge of facts relating to the act*, indirect contempt is 'misbehavior that occurs outside the actual or constructive presence of the court.' Id. One accused of *indirect* contempt is entitled to a 'hearing on the charge, at which the court must investigate the charge, hear any answer or testimony that the accused makes or offers, and then determine whether the accused is guilty.' Id.

{¶ 41} "Although punishment is inherent in contempt, courts will categorize the penalty as either civil or criminal *based on the character and purpose of the punishment. In re J.M.*, 12th Dist. No. CA2008-01-004, 2008-Ohio-6763, citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 416 N.E.2d 610. While

{¶ 42} criminal contempt is characterized by an *unconditional* prison sentence, civil contempt is marked by remedial or *coercive* punishment, doled out for the 'benefit of the complainant.' Id." (Emphasis added.)

{¶ 43} The importance of classifying the types of contempt is thus the effect the classification has on the rights of the contemnor. Direct contempt of court occurs in a way so closely related to the court itself that a finding may occur summarily; the court is not required to deal with direct contempt by providing the contemnor with a hearing. *In re Purola* (1991), 75 Ohio App.3d 306, 596 N.E.2d 1140.

{¶ 44} In contrast, indirect contempt of court does not occur in the presence of the court, and a hearing is required to provide the contemnor with the opportunity to explain his actions. Furthermore, if the indirect contempt is criminal in nature, then intent to defy the court must be proven beyond a reasonable doubt. *Brown v. Executive 200, Inc.*

**{¶ 45}** A sanction for civil contempt allows the contemnor to purge himself of the contempt. *Tucker v. Tucker* (1983), 10 Ohio App.3d 251, 461 N.E.2d 1337. Once the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued. *Cleveland v. Ramsey* (1988), 56 Ohio App.3d 108, 110, 564 N.E.2d 1089.

**{¶ 46}** In this case, it is clear the trial court found Hanan to be in direct, civil contempt for her failure to comply with two earlier orders, viz., the order to pay appellees the remainder of the settlement amount by September 1, 2010; and also, the order to submit to the deposition conducted by appellees on November 3, 2010. The trial court, therefore, was not required to provide Hanan with a hearing prior to making its finding. Pursuant to Civ.R. 37(D), Hanan was required to seek a protective order to protect her interests.

**{¶ 47}** Appellants argue the trial court's finding nevertheless was improper because the court was requiring Hanan to incriminate herself before determining whether the documents contained incriminating information and before determining whether she could actually produce them. As authority for their position, they cite, inter alia, *Curcio v. United States* (1957), 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225. The facts in this case, however, are more analogous to those addressed in *United States v. Rylander* (1983), 460 U.S.

752, 103 S.Ct. 1548, 75 L.Ed.2d 521, in which the United States Supreme Court distinguished *Curcio* by observing as follows:

{¶ 48} "Rylander * * * was held in contempt <u>for failure to comply with a previous order</u> of the District Court * * * . This order, unappealed from, <u>necessarily contained an implied finding that no defense of lack of possession or control had been raised and sustained in th[e underlying] proceeding</u>. The only issue open

{¶ 49} to Rylander in defending the contempt proceeding was to show inability to *then* produce, and because of the presumption of continuing possession arising from the enforcement order, [citation omitted], if he sought to defend on that ground he was required to come forward with evidence in support of it. The fact that his refusal to come forward with such evidence was accompanied by a claim of Fifth Amendment privilege may be an adequate reason for the court not compelling him to respond to cross-examination <u>at the contempt hearing</u>, but the claim of privilege is not a substitute for relevant evidence." (Emphasis in original; underscoring added.)

{¶ 50} Similarly, in *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Elec. Service Co.* (C.A.6, 2003), 340 F.3d 383. The court stated:

**{¶ 51}** "When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court. See *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir.1987). Recognizing that the power 'to punish for contempts' should not be used lightly, the Supreme Court has stated that this power 'is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees

**{¶ 52}** would be only advisory.' *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner. *Cincinnati Bronze*, 829 F.2d at 590. With respect to civil contempt proceedings, '[j]udicial sanctions * * * may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

**{¶ 53}** "In order to hold a litigant in contempt, the movant must produce clear and convincing evidence that shows that 'he violated a definite and specific order of the court requiring him to perform or refrain from performing

a particular act or acts with knowledge of the court's order.' *Cincinnati Bronze*, 829 F.2d at 591 (quotation and brackets omitted). * * * Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order. *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) ('[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is

{¶ 54} settled, however, that in raising this defense, the defendant has a burden of production.'). To meet this production burden in this circuit 'a defendant must show categorically and in detail why he or she is unable to comply with the court's order.' *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quotation omitted). When evaluating a defendant's failure to comply with a court order, we also consider whether the defendant 'took all reasonable steps within [his] power to comply with the court's order.' *Peppers*, 873 F.2d at 969.

{¶ 55} " * * *

{¶ 56} "Many decades ago, in a case where a corporate officer who failed to comply with a subpoena duces tecum was held in contempt, the Supreme Court stated:

{¶ 57} 'A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the [order] directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.' *Wilson v. United States*, 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771 (1911) * * * ."

{¶ 58} At any event, "Ohio law is clear that the protection against compulsory self-incrimination does not extend to prohibit civil litigation where the *possibility* of prosecution exists, nor does it require staying a related civil case until a criminal appeal is resolved." *Ohio Bar Liab. Ins. Co. v. Silverman*, Franklin App. No. 05AP-923, 2006-Ohio-3016, ¶12, citing *State ex rel. Verhovec v. Mascio*, 81 Ohio St.3d 334, 1998-Ohio-431, 692 N.E.2d 282 and *Urban v. State Med. Bd.*, Franklin App. No. 03AP-426, 2004-Ohio-104 (Emphasis added). See, also, *Commonwealth Land Title Ins. Co. v. Davis* (1989), 67 Ohio App.3d 521, 579 N.E.2d 503.

{¶ 59} The trial court correctly observed that by entering into a settlement agreement with appellees, she acknowledged liability on appellees' claims, and became bound by the trial court's order. Considering that Hanan had not been either indicted in a criminal matter, or called to testify against

herself in one, the trial court did not abuse its discretion in finding her in contempt for refusing to comply with its previous orders. *In re Original Grand Jury Investigation (Kaiser)*, Mercer App. No. 10-02-20, 2003-Ohio-1670, ¶15.

**{¶ 60}** For the foregoing reasons, appellants' assignments of error are overruled.

**{¶ 61}** The trial court's order is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., CONCURS
FRANK D. CELEBREZZE, JR., J., CONCURS
(SEE ATTACHED CONCURRING OPINION)


FRANK D. CELEBREZZE, JR., J., CONCURRING:

{¶ 62} I concur with the majority, but write separately to stress the inapplicability of the Fifth Amendment right against self-incrimination as it relates to corporate records.

{¶ 63} Here, the whereabouts of money belonging to Tri-Monex is a business record of the corporation and is not subject to Fifth Amendment privilege. Also, questions about Tri-Monex's corporate structure and business dealings are not subject to Fifth Amendment privilege because the corporation does not enjoy such a right. *Wilson v. United States* (1911), 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, at the syllabus. "'Since the Fifth Amendment right is a personal right, an individual may not claim such privilege on behalf of a collective entity or organization of which he may be a part. Neither a partnership, a corporation, nor any other collective entity is shielded by the Fifth Amendment from the compelled production of an organization's records.'" *Quinlan v. Ohio Dept. of Commerce, Div. of Consumer Fin.* (1996), 112 Ohio App.3d 113, 122, 678 N.E.2d 225, quoting *Cincinnati v. Bawtenheimer* (1992), 63 Ohio St.3d 260, 264, 586 N.E.2d 1065, fn. 2.

{¶ 64} Appellees asked, "what is the business of Tri-Monex, Inc.," a question that is purely related to the corporation and not personal under any proper reading of Fifth Amendment law governing corporate and private

privileges. Appellees also asked for certain documents, whether Tri-Monex held any bank accounts, and where money was deposited that was given to Tri-Monex. These are also questions relating to the corporation and not the individual. Appellants must provide these corporate records because they are not personal in nature.