238

**HOUGH, Estate of, In re.**

Probate Court, Clark County.

Decided March 6, 1958.

**OPINION**

By GRAM, J.

An application for refunder of inheritance tax upon succession passing to Mrs. Georgia Chapman under the will of Bert Hough was filed in the Probate Court of Clark County on March 27, 1957, and reads as follows:

"Now come Dorothy E. DeWitt and John R. Chapman, Executors of the estate of Georgia E. Chapman, deceased, and respectfully represent to the Court that the said Georgia E. Chapman died testate a resident of Springfield Township, Clark County, Ohio on or about April 22, 1957; that by and under the terms of the Last Will and Testament of Bert Hough, deceased, heretofore in 1952 admitted to probate and record in this Court, certain real estate of the appraised value of $29000.00 was devised to the said Georgia E. Chapman (she being named in said Will as Mrs. Georgia Chapman) for and during her natural lifetime.

"That such devise was a taxable succession from the said Bert Hough, deceased, to the said Georgia E. Chapman, and proceedings were heretofore had for the determination, assessment and payment of the tax accrued on account thereof and on September 16, 1952, said tax was paid by the said Georgia E. Chapman.

"That in the determination of said tax the life expectancy of the said Georgia E. Chapman was considered as approximately 10 years. The date of the death of said Bert Hough was May 21, 1952. The said Georgia E. Chapman having died on April 22, 1957, the actual duration of the estate enjoyed by her was four years and eleven months.

"Wherefore, said Executors pray that a refund of such tax be

made to them in such amount that will reduce said tax to the amount which would have been assessed on account of the actual duration or extent of the estate enjoyed by the said Georgia E. Chapman."

The foregoing application was signed and sworn to by Dorothy E. DeWitt and John R. Chapman as executors and beneficiaries under the will of Georgia Chapman, deceased. It should be noted that the amount of the inheritance tax paid by said Georgia Chapman on September 16, 1952 was in the total amount of $1,039.61. It is therefore the prayer of the Executors of the estate of Georgia Chapman that whatever amount over and above the amount that was due for 4 years and 11 months would be the amount for which the refunder is now requested.

A hearing was had in the Probate Court on July 18, 1957, with the Attorney General of the State of Ohio and one of his assistants, Gerald A. Donahue, representing the Department of Taxation of Ohio and George C. Collins as attorney for the executors of the estate of Georgia Chapman.

Brief was filed by Mr. Donahue on behalf of the Department of Taxation on September 14, 1957. In their Brief, counsel suggested that the issue before the Probate Court was

"Where the Probate Court fixes the value of a life estate and remainder based on the actuarial value on the date of death may it subsequently adjust the values based on the actual duration of the life estate and order a refund?"

It was pointed out by counsel that the pertinent provisions of the inheritance tax chapter directly effecting the said issue, are §§5731.23, 5731.24 and 5731.27 R. C.; that §5731.23 R. C., establishes the method to be used in valuing life estates for purposes of inheritance tax, and that most states having inheritance tax laws have enacted identical or similar statutes, citing American Law of Property, Vol. I, Section 2.25, p. 166; that the language of the section is mandatory is provided in the following language:

"The value of a * * * limited estate * * * shall be determined by the rule, method and standard of mortality and value employed by the superintendent of insurance."

It is further claimed that no exceptions or limitations are provided to the language and thus the table is made exclusive evidence of value; that its purpose is to create finality in fixing the value of a limited estate passing for inheritance tax purposes on the date of death to avoid suspended or postponed assessments where no possibility of divesting is present other than the termination of a specified period of time or for a life or lives in being. In supporting the foregoing statement counsel cite "Restatement, Property (1936), Section 133, comment in which the following statement was made:

"the annuity tables employed are calculated on the particular experience table of mortality employed in the state wherein the land is located and on the rate of interest utilized in that state for the calculation of the present value of an estate for life. Other evidence as to the ancestry, health, or habits of the parties is inadmissible. The rule works a hardship in an occasional situation. The reverse position would in-

troduce a complex issue, on which little but expert medical evidence could be used, in a large number of cases. A substantial balance of convenience favors the stated rule."

Counsel also points out that mandatory language is also employed in §5731.24 R. C., fixing the value of remainders and for the same reasons.

It is claimed that if life estates and remainders absolutely vested in nature were to be computed based on actual duration then it would be unnecessary to enact such legislation; that the temporary provisions provided for in §5731.28 R. C., could be utilized and the tax determined temporarily at the highest rate pending the termination of the life estate; that this procedure was devised to allow immediate taxation so that contingencies or conditions of divestment would not imperil collection of the tax, citing Matter of Parker, 226 N. Y., 26; Tax Commission v. Oswald, 109 Oh St 36; Wonderly v. Tax Commission, 112 Oh St 233.

Counsel also directs our attention to the fact that in 1921 the Attorney General ruled that life estates were to be computed upon the actuarial or theoretical value, regardless of the life tenant's death prior to the determination of inheritance tax on his interest, in an opinion of 1921, No. 1786, page 12; that if actual duration were considered a factor then obviously the Attorney General would have been justified in ascribing no value to the life estate; that this opinion subsequently lead to the passage of §5731.27 R. C., which now allows a life tenant's interest to be computed on actual duration but only if the tax on the life interest has not been computed prior to its termination, and that no further exception was provided for.

Referring to similar issues that have arisen in other jurisdictions counsel cited the case of Ithaca Trust Co. v. United States, 73 L. Ed. 947, 279 U. S., 151, the headnote of which provides:

"The value of charitable gifts from a remainder after a widow's life estate, for deduction from the gross estate in fixing the estate tax, is to be determined by the probable duration of the widow's life estate at the time of the testator's death as shown by the mortality tables; not by the fact that she dies within a short time after the trust goes into effect."

In that case it was pointed out that the court based its approach on the fact that the liability for taxes was fixed as of the date of death; that the approach for Ohio inheritance tax is identical, suggesting that the accrual date of the tax is the date of death, and citing the cases of Village of Belle Center v. Board of Trustees of Roundhead, 99 Oh St 50; McDonald v. Evatt, 145 Oh St 457; In re Saviers, 23 Abs 166. Citing the New York case of In re Frauenthals Estate, 256 N. Y. S., 834, the second and third headnotes provide:

"2. Value of life tenant's interest in property passing under deed of trust held taxable, notwithstanding she survivied decedent by only 24 days;

"3. Statute requiring valuation of life estate for transfer tax purposes to be determined by the use of standard mortality tables held mandatory on appraiser and surrogate."

Then counsel calls attention to a number of New York. Massa-

chusetts, Connecticut, and Pennsylvania cases which are identical more or less to the statutes presently in effect in Ohio, counsel pointing out that these authorities establish the proposition that life estates are to be fixed at a theoretical value for purposes of inheritance tax as of the date of death without regard to subsequent events affecting duration; that a contrary view would interject an element of uncertainty into all proceedings where a life estate and remainder were created and for practical purposes nullify the effectiveness of statutes providing an actuarial basis for computing values; that indeed it would be doubtful in most cases that actual duration of the particular life estate will correspond to the theoretical life expectancy set up by mortality tables, and that actuarial tables are devised to eliminate uncertainty and to provide a fair norm for calculating interests based on probabilities of life and death.

Counsel stresses the fact that the general refund provision §5731.20 R. C., does not provide a basis for refunder; that no additional debt has been assessed against the general estate, no similar tax has been assessed in a foreign state or country and the original order has not been modified or reversed as the result of exceptions or appeal.

Anticipating a possible claim that a refund might be granted in this matter by an application of the Court's general equity powers counsel for the tax commission of Ohio stress the fact that in this instance there was no mistake of fact in connection with the determination of the tax; that the proper factual situation existing on the date of death was before the court, and that any uncertainty of the probability of life, a fact which is always uncertain, is compensated for by the use of mortality tables; that the effect of the events subsequent to the date of death, no matter how detrimental, are of no consequence since the tax accrues as of the date of death.

In conclusion counsel for the tax commission of Ohio urged that the original determination of tax is not subject to modification and that this has been the unquestioned administrative construction and practice since the enactment of the present direct inheritance tax law in 1919 and they cite the case of **In re Friedman, 154 Oh St 1, at page 10.** Counsel also states that the tax in this case was properly determined in accord with the facts existing on the date of the death of the decedent herein; that the proceeding injects the elements of certainty and finality with respect to the determination of tax liability; that it could not request a redetermination if the facts were reversed, and that if such practice were invoked estates might have to be held pending for years because of the possibility of an increase in tax liability for which a fiduciary could be held liable; that the method of valuation is fair, based on long established actuarial factors promulgated primarily for use in the life insurance field.

Brief on behalf of the executor of the estate of Georgia E. Chapman, deceased, was filed in the Probate Court on December 9, 1957. Counsel disagrees with the statement as to the issue in the case made by the Tax Commission and states that it is the opinion of the executors that where the Probate Court has determined the value of a life estate upon

the actuarial basis provided in §5731.23 R. C., and the inheritance tax has been determined and paid, and the life tenant thereafter dies within the period of time considered on such actuarial basis to be her life expectancy, that the Court may subsequently order a refund to be made of so much of such tax as well reduce the same to the amount which would have been assessed on account of the actual duration or extent of the estate enjoyed. Counsel for the executors cite in full §5731.23 R. C., and states that the applicants for the refund claim that their rights to such refund may be found within the provisions of that Section, and the procedure to obtain it is found within §5731.20 R. C., to which §5731.23 R. C., refers. Counsel points out that the first part of §5731.23 R. C., deals only with the manner in which a life estate shall be valued; that Georgia Chapman's life estate was valued in that manner, the basis of the valuation being an "Actuarial" or "theoretical" life expectancy for her of ten years. He then urges that the second paragraph of §5731.23 R. C., provides for a refund of so much of the tax as will reduce the same to the amount which would have been assessed on account of the actual duration or extent of the estate enjoyed. Counsel urges further that while the death of Georgia Chapman was certain to occur at some time in the future, that the possibility of her dying within the ten year period, which was the basis of the value of her life estate, was a contingency,—it was liable to occur, but not certain to occur within that period. And when her death did occur on April 22, 1957, her interest in the estate was certainly abridged, defeated and diminished and her enjoyment thereof was cut from a theoretical ten years to an actual four years and eleven months, and that counsel therefore believes that the real question in this case arises under the second paragraph of §5731.23 R. C., which provides for the tax refund and which reads as follows:

"—or in the event of the abridgment, defeat, or diminution of such estate, or interest therein, a refund shall be made in the manner provided by §5731.20 R. C., to the person properly entitled thereto, of a proportionate amount of such tax on account of the encumbrance taking effect, or so much as will reduce the same to the amount which would have been assessed on account of the actual duration or extent of the estate enjoyed."

Counsel then calls to the attention of the court the case of **Wonderly v. Tax Commission, 112 Oh St 233** and the fact that mention is made as to tax refunds by Judge Day and he quotes from that decision as follows:

"The frank purpose of the inheritance tax law seems to be to secure to the State the highest rate of taxation that any given succession is justly susceptible of in the legislative mind and to secure the same to the State at the earliest moment, subject to such refunders as the Legislature has seen fit to allow. If its provisions seem harsh, the place to seek the remedy is in the Legislature and not in the Courts. Judicial interpretation must be based on legislative enactment, as the same is found in the statute books."

In the Wonderly case an estate was left by Francis D. Kingseed

and having no widow surviving him and one son age of 11 years his will provided that all of his estate should pass to his eleven year old son, Wilbur Francis Kingseed, his heirs and assigns forever. In Item six testator provided further that if his son Wilbur should die before arriving at the age of 25 years without leaving heirs of his body then and in that event he gave, devised and bequeathed all that part of his estate to several named sisters and brother, and consequently the inheritance tax was assessed at the highest possible value because of the contingencies raised by the language of decedent's will. In the case before us, no such contingency existed as existed in the Wonderly case. The tax in this case was assessed against the life tenant as of the date of death of Bert Hough and there was no such contingency resulting in an abridgement, defeat or diminution of the estate passing to Georgia E. Chapman.

Counsel then cites two Ohio cases namely, Tax Commission v. Lamprecht, 107 Oh St 535, and Cassidy v. Ellerhorst, 110 Oh St 535 in which Chief Justice Marshall called attention to many deficiencies, ambiguities and uncertainties in the inheritance tax laws of Ohio. In the Case of Cassidy against Ellerhorst the then Chief Justice Marshall used the following language in the Opinion:

"In approaching the interpretation of statutes imposing taxes, it should be recognized at the outset that the rule of strict construction should be followed, and that, where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to embrace subjects of taxation not specifically named."

In conclusion counsel for the Executors of the estate of Georgia Chapman urges that there is such ambiguity or doubt as to the legislative intent in the statutes involved in this instant case, to-wit: §§5731.20 and §5731.23 R. C., that such doubt should be resolved in favor of these applicants by granting them a refund of the amount heretofore suggested.

Sec. 2131.01 R. C., reads as follows:

"The American experience table of mortality is the basis of determining present values in probate matters."

Prior to the enactment of §2131.01 R. C., both the American and Carlisle tables had been used in the State of Ohio. They had been used in ascertaining the present value of consummate or inchoate dower in real estate or of an annuity, payable either at a stated annual period or at some future date, have been used in fixing the measure of damages in an action brought for wrongful death of an individual, in the figuring of dower, and in partition actions. In substantially the form as quoted above, §2131.01 R. C., has been the law of Ohio since the Probate Code went into effect on January 1, 1932. Since that time, the American experience tables have been used in determining the taxable succession of a life estate and said tax has been assessed by a final order of the Court. The remainder interest was also taxed by final order and five percent was used in arriving at the determination. The only exception

to this rule applied in a case where the life tenant dies before the inheritance tax is determined. In this event the actual time the tenant lives is the time used to determine the amount of the succession and no regard is given to the mortality table.

It has been impossible to find any case law authorizing a redetermination of tax and a refunder in a situation where the life tenant did not live out the life expectancy as previously determined. It might also be noted that no additional tax could be levied in the event that the life tenant lives beyond that life expectancy as determined by the American tables. It would seem to the Court that owing to the fact that there are no reported cases that this law for determining life expectancy in the passing of the succession of real estate under the American tables has been accepted generally in the State of Ohio all these years.

An interesting discussion of this whole matter is to be found in a publication entitled, "A Treatise on the Laws on Estate and Inheritance Taxation " by Cassidy and Dargusch. At page 79 of said book the following statement is made:

"The value for inheritance tax purposes of dower interests, life estates and annuities, etc., is to be determined according to the provisions of §5342 GC (now §5731.23 R. C.). Under that section the rate of interest is fixed at five per cent."

Also on page 80 is the following:

"Under §5342.4 GC (present §5731.27 R. C.), where a life tenant or annuitant dies prior to the determination of inheritance tax, the actual amount paid or payable to such life tenant or annuitant is the amount to be taxed. Formerly a life estate or annuity was valued for inheritance taxation in every instance at its theoretical value. Thus where a life tenant who had an expectancy of twenty years died shortly after the testator, it was held by the Ohio Attorney General that the value of the life estate was to be determined on its theoretical basis and not the actual duration."

Also quoting further from page 80:

"A life estate or annuity which may be divested by an act or omission of the life tenant or annuitant is to be appraised under §5344 GC (present §5731.31 R. C.), for inheritance tax purposes as though no possibility of divesting exists. Applying §5344 GC, the Ohio Attorney General held that where a testator's will gave his widow a life estate with power to consume the principal, remainder to decedent's children, but with a provision that if the widow sold she should have only her dower and distributive share, a life estate should be charged to the widow under §5344 GC, with a subsequent readjustment if divested."

The Court is of the opinion that that portion of the second paragraph of §5731.23 R. C., beginning with the words: "—or in the event of the abridgment, defeat, or diminution of such estate, etc," does not support the arguments of counsel that there is such ambiguity or doubt as to the legislative intent in §§5731.20 and 5731.23 R. C., as would warrant the Court in saying that such doubt should be resolved in favor of the applicants for this refund. We believe that the whole statute has to be read together and that there was no such abridgment, defeat or

diminution of Georgia Chapman's estate, either at the time the value of her succession was determined under the American actuarial tables or since that event which would entitle her estate to a refunder under the provisions of §§5731.20 and 5731.23 R. C.

We believe further if there is anything wrong or unjust in the settlement of estates in which these statutes are involved, correction should be made thru legislative enactment.

It is therefore the opinion of the Court and he holds that no refund of any portion of the tax paid by the decedent should be refunded to the executors of her estate.