DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Jackson County Common Pleas Court judgment that affirmed an administrative appeal decision by the Ohio Department of Job and Family Services (ODJFS), defendant below and appellee herein, that found Bessie Cook, plaintiff below and appellant herein, ineligible for Medicaid benefits. Appellant does not assign errors for review, as required by App.R. 16(A)(3), but does posit the following "issue for review" which we will treat as an assignment of error:
"Did The Trial Court Err In Affirming The Use By The Department Of Job And Family Services Of The Life Table Created By The Adoption Of Administrative Regulations By The State Of Ohio."
 {¶ 2} A brief summary of the facts pertinent to this appeal is as follows. Appellant is an eighty-three (83) year old woman who currently resides at the "Four Winds Nursing Facility" in Jackson, Ohio. In 1995, she and her husband conveyed two lots of land to their son, Lawrence Cook, but reserved for each of them a life estate.
 {¶ 3} Appellant began residing at a long-term care facility two years later and, in April of 1997, began receiving Medicaid for the Aged (MAA) to assist in paying her nursing home bills. At the time, appellant's life estate was valued at more than $18,000. However, because several realtors represented that they would not, or could not, sell the life estate in view of appellant's advanced age, that asset was not considered to be an available resource for purposes of determining MAA eligibility. The following year, an eligibility redetermination was performed. Once again, the life estate was valued at more than $18,000 but was not considered an available resource because no one thought that the estate could be sold. The same result apparently occurred during eligibility redeterminations in both 1999 and 2000.
 {¶ 4} Appellant eventually "signed off" on her life estate and, in August of 2000, her son conveyed the property to John R. Stabler for $13,000.[1] Subsequently, the Jackson County Department of Job and Family Services (JCDJFS) determined that $7,583.42 of those proceeds should be allocated to appellant as payment for her life estate. JCDJFS arrived at that figure by using the $18,000 value assigned the life estate in 1997 and using a life estate table set out in the Ohio Administrative Code. This allocation of proceeds put appellant above the maximum limit of financial resources that she could retain for MAA eligibility. In January of 2001, appellant received notices that Medicaid payments would be terminated.
 {¶ 5} Appellant requested a hearing and, on April 30, 2001, the hearing officer partially sustained appellant's appeal. The hearing officer concluded that JCDJFS erred in using the 1997 valuation of the life interest rather than a "current" valuation. Insofar as its use of the administrative tables to determine allocation of proceeds to the life estate, the hearing officer concluded that appellant's proposed use of a different table exceeded her authority.
 {¶ 6} Appellant filed an administrative appeal of that decision and argued that the life estate tables used by ODJFS violated both state and federal law. ODJFS, in its May 23, 2001 decision, affirmed the hearing officer's determination on all points. The two administrative hearing examiners who considered the appeal found that the agency's life estate tables were properly promulgated under Ohio law and that no other method provided by law existed to calculate the life estate's value. Thus, because nothing in the hearing officer's decision was against the weight of the evidence or involved a misapplication of a rule or law, the hearing examiner affirmed the hearing officer's decision.
 {¶ 7} On May 30, 2001, appellant commenced the action below as an administrative appeal from ODJFS. She alleged that the tables used to place a value on her life interest violated both state and federal law and that the agency should "use a more accurate table." Appellant asked that the ODJFS decision on her life estate value be reversed. The parties submitted the matter on the briefs and, on December 5, 2002, the trial court, in essence, affirmed the administrative appeal decision. The trial court held that the table used by ODJFS was proper and "although the values may differ from what would be attained by use of other life expectancy tables, the Rule [was] promulgated and adopted in compliance with federal regulations." With respect to the value inserted into that table, however, the court held that ODJFS should have used the recent sale price of the property because that price is the "fair market value" obtained in an arms length transaction. Thus, the trial court ordered ODJFS to compute appellant's eligibility by applying the appropriate percentage from the administrative table to the net sale proceeds. This appeal followed.
 {¶ 8} Appellant argues in her assignment of error, as she did in the trial court proceedings, that the trial court erred in affirming the ODJFS decision of appellant's life estate interest is unreasonable and constitutes a violation of Medicaid laws. At the outset of our analysis, we note that an aid recipient who disagrees with an ODJFS administrative appeal decision may appeal that decision to a common pleas court pursuant to R.C. 119.12. See R.C. 5101.35(E). When reviewing administrative appeals brought under R.C. 119.12, a common pleas court is not permitted to try the issues de novo or to substitute its judgment for the administrative agency. Smith v. Sushka (1995), 103 Ohio App.3d 465, 470,659 N.E.2d 875; Cook v. Maxwell (1989), 57 Ohio App.3d 131, 135,567 N.E.2d 292; Steinbacher v. Louis (1987), 36 Ohio App.3d 68, 71,520 N.E.2d 1381. Instead, the trial court is limited to determining whether the administrative agency's decision is supported by reliable, probative and substantial evidence and was made in accordance with law. See Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748; In re Williams (1991), 60 Ohio St.3d 85, 86,573 N.E.2d 638. If a further appeal is taken from the common please court, the appellate court is restricted to ascertaining whether the common pleas court abused its discretion in reaching that determination. See Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. ofEdn. (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240.[2]
 {¶ 9} An abuse of discretion is described as more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut.Ins. Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v.Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242;State ex rel. Solomon v. Police Firemen's Disability PensionFund Bd. of Trustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. When conducting a review under the abuse of discretion standard, appellate courts are admonished that they must not substitute their judgment for the trial court. See State ex rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1
(1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181; Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Rather, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will, but the perversity of will; not the exercise of judgment, but the defiance of judgment; and not the exercise of reason, but passion or bias. Vaught v.Cleveland Clinic Found., 98 Ohio St.3d 485, 787 N.E.2d 631,2003-Ohio-2181, ¶ 13; Nakoff v. Fairview Gen. Hosp. (1996),75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 10} The administrative regulations at issue in the instant case involve Ohio's participation in the federal Medicaid program. The Medicaid program was established in 1965 under Title XIX of the Social Security Act and provides federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. Schweiker v. Gray Panthers (1981), 453 U.S. 34, 36,69 L.Ed.2d 460, 101 S.Ct. 2633; Harris v. McRae (1980), 448 U.S. 297, 301,65 L.Ed.2d 784, 100 S.Ct. 2671. Each state that participates in the Medicaid program must develop a plan which includes "reasonable" standards for determining eligibility for medical assistance under the program. Section 1396a(a)(17), Title 42, U.S. Code; also see Wisconsin Dept. Of Health Family Serv. v. Blumer (2002), 534 U.S. ___, ___, 151 L.Ed.2d 935,943, 122 S.Ct. 962. An individual is then entitled to Medicaid if she satisfies the criteria adopted by the state in which she lives.Schweiker, supra at 36.
 {¶ 11} In Ohio, the General Assembly has delegated the authority to adopt rules establishing standards, procedures and other requirements regarding provision of medical assistance under Medicaid to the Department of Job and Family Services. R.C. 5111.01(D). In turn, ODJFS has determined that only individuals with less than $1,500 in available resources qualify for Medicaid. Ohio Adm. Code 5101:1-39-05(A)(8). In determining whether a recipient is above that resource limitation, ODJFS has promulgated the following regulation regarding life estates in real property:
"(1) If the life estate owner has the right to use the property but cannot transfer that right, the property is not considered an available resource. The CDHS shall not determine a value to be placed on the life estate in accordance with rule 5101:1-39-05 of the Administrative Code.
(2) If the estate owner has the right to use the property and can transfer that right (or sell the right), the life estate is considered a potential resource. The CDHS shall determine whether or not the property meets the definition of a homestead or income-producing property and whether or not the value is exempt based on those definitions. If the life estate is not exempt based on the homestead or income producing property definitions, the life estate shall have its value determined in accordance with appendix A of this rule." Ohio Admin. Code 5101:1-39-32(E).
 {¶ 12} The Appendix A table referenced in the regulation is not included in the regulations but is set out in appellee's brief and is also available on Westlaw.[3] That appendix shows a factor of .43659 for an eighty (80) year old life tenant. Applying that figure to the net sale proceeds in this case results in a $5,222.87 value for appellant's life estate.[4]
 {¶ 13} Appellant argues that this value is "unreasonable" and "absurd" and attributes to her imaginary resources while, in reality, she has very little real resources. We acknowledge that appellant has a heavy burden to provide that the Appendix A table is unreasonable. Administrative regulations are presumed reasonable, both factually and legally, and the burden rests on the challenging party to introduce evidence to the contrary. Roosevelt Properties Co. v. Kinney (1984),12 Ohio St.3d 7, 13, 465 N.E.2d 421, citing State, ex rel. Shafer v. OhioTurnpike Comm. (1953), 159 Ohio St. 581, 590, 113 N.E.2d 14. Moreover, federal courts have consistently held that state regulations administering the Medicaid program should not be disturbed so long as they are reasonable. See Emerson v. Steffen (C.A. 8 1992), 959 F.2d 119,122; Mattingly v. Heckler (C.A. 7 1986), 784 F.2d 258, 267; Harris v.Luckhard (C.A. 4 1984), 733 F.2d 1075, 1079. Thus, appellant must do more than simply show that other tables may be more "reasonable." Rather, appellant must prove that the Appendix A table is unreasonable. In other words, appellant must show that the agency's use of the table is irrational, absurd, preposterous or senseless. Black's Law Dictionary (5th Ed. 1979) 1379.
 {¶ 14} Appellant attempted to show that the Appendix A table was unreasonable because Ohio has adopted the so-called "American Experience Table" and the "Carlisle Table" for "use in valuing life estates" and that, under these tables, her life estate would have been valued at 3% to 4% of the value of the property. The trial court concluded that appellant's argument was not persuasive. We find neither error nor an abuse of discretion in the trial court's conclusion.
 {¶ 15} To begin, appellant did not provide a specific statutory cite for the tables to which she referred and it appears that neither table is still in use in Ohio.[5] Second, even if we apply the American Experience and Carlisle tables, we do not reach appellant's arithmetical results. Rather, when we employ the American Experience Table, we find that appellant's life estate should be valued at $2,990.95.[6] Using the Carlisle table, we conclude that appellant's life estate would have a $3,984.84 value.[7] While these amounts are less than the Ohio Administrative Code value (e.g. $11,962.86 x .43659 = $5,222.87) the discrepancy is not quite as great as appellant asserts.
 {¶ 16} Moreover, we are not persuaded that this discrepancy permits us to conclude that the Appendix A Table is unreasonable as a matter of law. We recognize that it is virtually impossible to precisely value a life interest in real estate. The most that can be done is to approximate the of value by taking into account all contingencies and surrounding circumstances including similar or comparable land value and life expectancy. 1 Kerr, Real Property (1895) 518-519. The difficulty in valuing life estates is readily seen in its historical treatment. One old common law rule computed the value of a life interest by simply assigning it one-third the value of the fee. See 51 American Jurisprudence2d (2000), 301, Life Tenants and Remaindermen, § 108. Another rule valued life estates at "seven years' purchase of the fee." Rice, A Treatise on the Modern Law of Real Property (1897), 149, § 75. The more modern practice is to estimate the value of a life estate with reference to the life tenant's life expectancy as shown by recognized mortality tables. 51 American Jurisprudence2d, supra at 301; Rice, supra at 149.
 {¶ 17} The American Experience and Carlisle Tables are only two of the mortality tables used to assert the value of a life estate.[8] The Internal Revenue Service provides another method in Section 20.2031-7(d)(2)(ii), Title 26 C.F.R.[9] Indeed, prior to the current version of the regulation, the Internal Revenue Service had a mortality table included in Section 20.2031-7A, Title 26 C.F.R. which set out the valuation factors for life estates. See 3 Merrick-Rippner, Probate Law (2003) 730-731. The life estate factors in that table coincide exactly with the life estate factors set out in Ohio Admin. Code 5101:1-39-32(E). In other words, it appears that ODJFS took Appendix A of that regulation directly from the Internal Revenue Service regulation that was in effect prior to May 1, 1999. In light of that fact, and in light of the inherent difficulty of valuing life estates in general, as well as the divergent results reached by applying the various tables examined herein, we cannot conclude that the Appendix A table is unreasonable as a matter of law. Therefore, we cannot conclude that the trial court abused its discretion when it affirmed the administrative appeal.
 {¶ 18} Our decision should not be construed, however, to conclude that we are unsympathetic to appellant's position. It is difficult to imagine that any purchaser would pay $5,222.87 for the life interest of an eighty year old woman in poor health and residing in a nursing home. However, in light of the other tables and the prior Internal Revenue Service regulation, from which Ohio's current regulatory table appears to have been taken, we cannot conclude that the regulatory scheme in this state is per se unreasonable. The only recourse is that General Assembly could decide to explicitly address this issue. In any event, for these reasons, appellant's assignment of error is without merit. Accordingly, we hereby overrule appellant's assignment of error and we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment Opinion.
[1] We note that the deed from Lawrence Cook to John Stabler does not show the life interest conveyed to the grantee and we have found no other document in the original papers to indicate that appellant relinquished her interest. Nevertheless, because appellant concedes in her brief that she "signed off" on her interest, we will assume that was the case for purposes of our review.
[2] We are cognizant of Brown v. Ohio Bur. of Emp. Services (1994),70 Ohio St.3d 1, 3, 633 N.E.2d 1230, in which the Ohio Supreme Court deviated from prior case law by phrasing the standard of review facing the court of appeals as whether the common pleas court decision is supported by reliable, probative and substantial evidence. This Court has previously noted the anomaly of Brown and conceded that it is unclear the extent to which the Supreme Court has sub silento overruled its previous decisions holding appellate courts to "an abuse of discretion" standard. See e.g. Baughman v. Dept. of Publ. Safety Motor Vehicle Salvage (1997),118 Ohio App.3d 564, 570-571, 693 N.E.2d 851, at fn. 4; Vogelsong v. OhioState Bd. of Pharmacy (Dec. 27, 1996), Scioto App. No. 96CA2448; Wellsv. Monroe Cty. Bd. of Commrs. (Jun. 28, 1995), Scioto App. No. 94CA2273. We are also aware that a number of other Ohio appellate courts have ignored Brown and continue to apply the abuse of discretion standard in reviewing a common pleas court judgment. See e.g. Allgood v. Akron
(2000), 136 Ohio App.3d 529, 532, 737 N.E.2d 111; Steinfels v. OhioDept. Of Commerce, Div. Of Securities (1998), 129 Ohio App.3d 800, 803,719 N.E.2d 76; Quinlan v. Ohio Dept. Of Commerce, Div. Of ConsumerFinance (1996), 112 Ohio App.3d 113, 117, 678 N.E.2d 225; Sohi v. OhioState Dental Bd. (Oct. 23, 1998), Hamilton App. No. C-970739; Goldman v.State Med. Bd. of Ohio (Oct. 20, 1998), Franklin App. No. 98AP-238; Seithv. Ohio Real Estate (Aug. 6, 1998), Cuyahoga App. Nos. 73181 
73182. Until further clarification is issued from the Ohio Supreme Court on this matter, we will continue to apply the abuse of discretion standard in reviewing common pleas court decisions in administrative appeals.
[3] A footnote to Ohio Adm. Code 5101:1-39-32 states that the appendix is referenced but not set out in the regulations. It is available, however, on WESTLAW or from the Legislative Service Commission.
[4] A closing statement included in the original papers shows that net proceeds from the sale of land was $11,962.86.
[5] Appellant refers in her brief to "The American Experience Table" and "The Carlisle Table" as the tables adopted by the Ohio General Assembly but provides no statutory reference for those tables. We note that the "Carlisle" and "American Experience" tables were used in this state prior to 1932 to determine the value of an annuity or inchoate dower in real estate. See In re Estate of Hough (Pr.Ct. 1958), 78 Ohio Law Abs. 238, 243, 152 N.E.2d 561. Effective January 1, 1932, Ohio adopted a "Probate Code" that mandated the use of the "American Experience" table for determining the present value in probate matters. See Am.S.B. No. 10, 114 Ohio Laws 320, 469. This mandate was codified at G.C. 10512-1 and was carried over into R.C. 2131.01 when the Ohio Revised Code was adopted in 1952. Effective October 29, 1999, however, the General Assembly repealed R.C. 2131.01 and enacted a new version to require that present values for probate matters be determined pursuant to R.C. 5731.01(B). See Am.Sub.H.B. 59, 7 Baldwin's Ohio Legislative Service L-862, L-875. The provisions of R.C. 5731.01(B) state, inter alia, that the value of property in an estate shall be the price at which such property would change hands between a willing buyer and a willing seller. Rulings and regulations of the Internal Revenue Service are also applicable. Id. Thus, it appears that neither the "Carlisle" table nor the "American Experience" table are still in use in Ohio.
[6] The American Experience Table can be found in Merrick-Rippner, Ohio Probate Law (1989) Mortality Tables pp. 5-9. The examples used to explain the table provide that the value of the property must be used (which, in the instant case is the sale of property, at $13,000). However, the trial court concluded that the life estate should be calculated based on the net sale proceeds rather than actual value and, because appellee has not appealed that portion of the judgment, we use the net sale proceeds of $11,962.86. Multiplying that number by a discount factor of 6%, as called for in the introduction, and then multiplying that product by 4.167 (the factor for an eighty year old person at a 6% discount figure) we arrive at a final value of $2,990.95.
[7] Again, we use the Carlisle table found in Merrick-Rippner, supra at 7-8. Multiplying the net sale proceeds of the property by a 10% discount factor, and then multiplying that result by a factor of 3.331 for an eighty year old person, we arrive at a result of $3,984.84.
[8] We note that the American Experience Table was regarded by some experts as not being authoritative because it was based on obsolete statistical data which resulted in a marked undervaluation of the life interest. See 2 Bonright, Valuation of Property (1937) 741; also see Kerr, Real Property (1895) 520 (referring to "unauthoritativeness" of mortality tables).
[9] This regulation calls for valuation of life interests after April 30, 1999 to be made using the applicable "Section 7520 interest rate" (published monthly by Internal Revenue Service Revenue Rulings) and the actuarial factors published in the most recent edition of Internal Revenue Service Publication 1457.