[Cite as *Pannell v. McCall*, 2025-Ohio-915.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Latasha R. Pannell, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 24AP-473 |
| v. | : | (C.P.C. No. 22JU-10698) |
| Kenneth McCall, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 18, 2025

**On brief:** *Jon Klein* for appellant.

**On brief:** *Kyle B. Keener* for Franklin County CSEA.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Kenneth McCall, Jr., appeals from the July 16, 2024 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch adopting the March 2021 administrative child support order of the Franklin County Child Support Enforcement Agency ("CSEA") as an order of the court, finding Mr. McCall in contempt for nonpayment of child support, calculating a child-support arrearage of $13,254.13 (as of September 30, 2023), and sentencing Mr. McCall to 30 days in jail with the opportunity to purge the contempt finding by making monthly payments on the arrearage. The juvenile court further found Mr. McCall was voluntarily unemployed and ordered him to seek gainful employment. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2}   Mr. McCall and plaintiff-appellee, Latasha R. Pannell, are the parents of K.M., who was born November 21, 2017.  On March 4, 2021, the CSEA entered an administrative order requiring Mr. McCall to pay $576.46 per month in child support and cash medical support, plus processing fees.  Neither party timely objected to that order, as permitted by Ohio Adm.Code 5101:12-45-05.3(D).

{¶ 3}   On October 18, 2022, CSEA filed a complaint to enforce administrative child support order, alleging that, as of September 30, 2022, Mr. McCall had failed to pay $6,917.52 in child support and cash medical support, plus processing fees.  (Oct. 18, 2022 Compl. at ¶ 2.)  CSEA thus requested the juvenile court adopt the administrative child support order as an order of the court, establish a child support arrearage in the amount shown at a hearing on the complaint, find Mr. McCall in contempt for failure to pay child support, and sentence Mr. McCall to incarceration as punishment for his failure to comply with the administrative child support order.

{¶ 4}   Following a trial before a juvenile court magistrate on August 24, 2023 and October 12, 2023, the presiding magistrate issued a decision on November 1, 2023 adopting the administrative child support order as a court order and finding Mr. McCall in contempt of court for noncompliance with that order.   The trial court entered judgment contemporaneously with the magistrate's decision pursuant to Civ.R. 53(D)(4)(e)(i).

{¶ 5}   Mr. McCall objected to the magistrate's decision, and the juvenile court held an oral hearing on his objections on July 1, 2024.  On July 16, 2024, the trial court overruled all of Mr. McCall's objections to the magistrate's decision, as described below.

{¶ 6}   Mr. McCall first contended he had not received proper notice of the March 3, 2021 child support administrative hearing, which was conducted via telephone due to CSEA's COVID-19 policy in effect at that time.  However, on review of the evidence, the juvenile court found Mr. McCall's contention unpersuasive in several respects. (*See* July 16, 2024 Decision and Jgmt. Entry at 3-6.)  Most notably, the juvenile court observed that Mr. McCall was actually present for the March 3, 2021 hearing that was the subject of his objection.  (*See* July 16, 2024 Decision and Jgmt. Entry at 5, citing Pl. Ex. J and Oct. 12, 2023 Tr. at 24.  *See also* Oct. 12, 2023 Tr. at 108-11.)

{¶ 7} Mr. McCall also objected to the magistrate's finding that he was voluntarily unemployed. Specifically, he contended that an injury he sustained after being shot in the foot on January 1, 2020 rendered him unable to work. On review, the juvenile court agreed with the magistrate's finding that Mr. McCall's testimony about the nature of his foot injury and his occupational limitations was not credible, as discussed more below. (*See* July 16, 2024 Decision and Jgmt. Entry at 7-10; Nov. 1, 2023 Mag.'s Decision at 2-3.) The juvenile court also found "numerous issues" with the "series of letters purporting to be from various treatment providers" Mr. McCall produced as evidence of his medical inability to work. (*See* July 16, 2024 Decision and Jgmt. Entry at 7-10.) Based on numerous spelling errors, formatting inconsistencies, missing signatures, and irregular dates observed in these letters, the juvenile court expressed "great concern over their authenticity" and suspected that "at least some of these letters may have been tampered with prior to being submitted as evidence in this case." (*See* July 16, 2024 Decision and Jgmt. Entry at 7-9.)

{¶ 8} For these reasons, the juvenile court found there was no credible reason for Mr. McCall's unemployment and failure to pay the ordered child support. (*See* Decision and Jgmt. Entry at 10-11.) Based on these findings, the juvenile court overruled Mr. McCall's objections and adopted the magistrate's decision granting CSEA's complaint to enforce the March 2021 administrative child support order as an order of the court, finding Mr. McCall in contempt for nonpayment of child support, calculating a child-support arrearage of $13,254.13 (as of September 30, 2023), sentencing Mr. McCall to 30 days in jail with the opportunity to purge the contempt finding by making monthly payments on the arrearage, and ordering him to seek gainful employment. (*See* July 16, 2024 Decision and Jgmt. Entry at 11; Nov. 1, 2023 Mag.'s Decision at 3-4.)

{¶ 9} Mr. McCall now appeals from the juvenile court's July 16, 2024 judgment and asserts the following two assignments of error for our review:

> [I.] THE COURT ERRED IN FINDING THAT THE MAGISTRATE WAS CORRECT IN FINDING [MR. MCCALL] WAS PROPERLY SERVED.
>
> [II.] THE COURT ERRED IN FINDING THAT [MR. MCCALL] WAS VOLUNTARILY UNEMPLOYED WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

(Sic passim.) (Appellant's Brief at 5.)

## II. ANALYSIS

### A. First Assignment of Error

{¶ 10} In his first assignment of error, Mr. McCall alleges he was not properly served with notice of the March 3, 2021 CSEA administrative hearing held via telephone. This is because, he contends, he no longer lived at the address where notice of that hearing was served by CSEA via Certified Mail on January 27, 2021. (*See* Def. Ex. 4.) However, Mr. McCall also admitted he appeared at that telephonic hearing. (*See* Oct. 12, 2023 Tr. at 108-11.) Thus, notwithstanding his appearance at the March 3, 2021 administrative hearing, Mr. McCall appears to take issue with the propriety of the CSEA's issuance of the March 4, 2021 administrative order based on his improper service claim.

{¶ 11} However, the appropriate mechanism for addressing such concern would have been a timely objection in the manner provided by Ohio Adm.Code 5101:12-45-05.3(D). Indeed, the March 4, 2021 administrative order notified Mr. McCall that he could "object to this administrative support order by bringing an action for the payment of support and provision for health care under ORC section 2151.231 in the juvenile court . . . of the county in which the CSEA that issues the order is located" within "fourteen days after the date of the issuance of the administrative support order." (*See* CSEA Ex. B at 5.) Nothing in the record before us suggests Mr. McCall raised a service issue in accordance with that procedure or at the March 3, 2021 administrative hearing. And, Mr. McCall does not dispute that he had notice of and a full and fair opportunity to appear and defend against issuance of the administrative support order at the hearing.

{¶ 12} Since Mr. McCall did not timely object to the CSEA's issuance of the March 4, 2021 administrative support order in the manner provided by Ohio Adm.Code 5101:12-45-05.3(D), we conclude he has waived any challenge to that order based on insufficiency of service of process. For this reason, we overrule his first assignment of error.

### B. Second Assignment of Error

{¶ 13} In his second assignment of error, Mr. McCall contends he should not have been found in contempt of court for nonpayment of the administrative child support order. For the following reasons, we disagree.

{¶ 14} Nonpayment of child support is addressed in R.C. 2705.02 and may result in a finding of civil contempt. *See* R.C. 2705.02(F). A prima facie case of civil contempt is made when the moving party proves, by clear and convincing evidence, both the existence of a court order and the nonmoving party's noncompliance with the terms of that order. *See, e.g., Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). The burden then shifts to the party opposing the contempt motion to establish a defense for nonpayment. *See, e.g., Rhea v. Rhea*, 2017-Ohio-4141, ¶ 13 (10th Dist.), quoting *Grosz v. Grosz*, 2005-Ohio-985, ¶ 18 (10th Dist.), citing *Rossen v. Rossen*, 2 Ohio App.2d 381, 384 (9th Dist. 1964). "[G]enerally, impossibility of performance is a valid defense against a contempt charge." (Citations omitted.) *Ruben v. Ruben*, 2013-Ohio-3924, ¶ 12 (10th Dist.). The contemnor bears the burden of proving his inability to pay the court-ordered spousal or child support by a preponderance of the evidence. *See, e.g., id.; Rife v. Rife*, 2012-Ohio-949, ¶ 10 (10th Dist.); *Pugh v. Pugh*, 15 Ohio St.3d 136, 139-40 (1984). For purposes of defending against a contempt charge, " '[a] party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show "categorically and in detail" why [he or] she is unable to comply with the court's order.' " *Robinson v. Rummelhoff*, 2014-Ohio-1461, ¶ 35 (10th Dist.), quoting *Briggs v. Moelich*, 2012-Ohio-1049, ¶ 15 (8th Dist.), citing *Lahoud v. Tri-Monex, Inc.*, 2011-Ohio-4120, ¶ 54 (8th Dist.).

{¶ 15} An appellate court will not reverse a finding of civil contempt in matters involving nonpayment of child support absent an abuse of discretion on the part of the trial court. *See, e.g., Rife* at ¶ 9; *Wehrle v. Wehrle*, 2013-Ohio-81, ¶ 8 (10th Dist.).

{¶ 16} "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable." (Internal quotations omitted.) *State v. Weaver*, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.) *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 7 (10th Dist.), quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances." (Internal quotations omitted.) *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*,

2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed.2014). A decision may also be arbitrary if it lacks any adequate determining principle and is not governed by any fixed rules or standards. *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed.1979). *See also State v. Hackett*, 2020-Ohio-6699, ¶ 19. A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 2008-Ohio-3567, ¶ 11 (10th Dist.).

**{¶ 17}** On purely legal questions, we apply de novo review. *New Asian Super Mkt. v. Weng*, 2018-Ohio-1248, ¶ 16 (10th Dist.).

**{¶ 18}** In this case, it is undisputed Mr. McCall has failed to make the child support payments in accordance with the administrative child support order and, as of September 30, 2023, had an arrearage of $13,254.13. (Nov. 1, 2023 Mag.'s Decision at 3-4.) Rather, Mr. McCall contends he demonstrated an inability to comply with his child support obligations due to medical injury pursuant to R.C. 3119.05(I). In support, he cites to his own testimony before the magistrate about being shot in the foot on January 1, 2020 and portions of medical records he produced at that hearing. Thus, he argues the juvenile court erred in finding he was voluntarily unemployed.

**{¶ 19}** Initially, we note Mr. McCall did not timely object to the March 2021 administrative support order pursuant to the procedure provided in Ohio Adm.Code 5101:12-45-05.3(D). And nothing in the record suggests he made any good faith attempts to modify or satisfy his legal obligations. Thus, CSEA initiated an action in October 2022— well over a year after the administrative child support order took effect on March 18, 2021, *see* Ohio Adm.Code 5101:12-45-05.3(C)—requesting the juvenile court enforce the administrative support order and find Mr. McCall in contempt based on his failure to comply with the order.

**{¶ 20}** Relevant here, R.C. 3119.05(I)(2) prohibits trial courts from finding a parent to be voluntarily unemployed and imputing income to that parent where that parent "is approved for social security disability insurance benefits because of a mental or physical disability" or "the court or agency determines that the parent is unable to work based on medical documentation that includes a physician's diagnosis and a physician's opinion regarding the parent's mental or physical disability and inability to work."

{¶ 21} In this case, it is undisputed Mr. McCall was not receiving any means-tested public assistance benefits or social security disability. (*See* Decision and Jgmt. Entry at 7.) And, on review, the juvenile court found Mr. McCall's laywitness testimony about the nature of his foot injury unclear and not credible. (*See* Decision and Jgmt. Entry at 7.) As described above, the juvenile court also detailed several concerns about the authenticity of letters Mr. McCall produced that were purportedly from various treatment providers all opining that he is unable to work. (*See* Decision and Jgmt. Entry at 7-9.) Moreover, the juvenile court cited its own observations of Mr. McCall at the July 1, 2024 hearing, as well as at prior hearings before the court, noting that Mr. McCall was not ambulating with any mobility assistance device or in a manner indicative of an ongoing foot injury. (*See* Decision and Jgmt. Entry at 9.) Further, the juvenile court noted that nothing in the record suggested Mr. McCall had made any attempts to obtain employment after he was shot while, at the same time, Mr. McCall testified about "volunteer[ing]" for his parents' car detailing business by assisting with the books at the time of the October 12, 2023 hearing before the magistrate. (*See* Decision and Jgmt. Entry at 10, citing Oct. 12, 2023 Tr. at 39-40.) Based on these findings, the juvenile court concluded there was no credible reason for Mr. McCall's unemployment and, thus, found him in contempt of the administrative support order. (*See* Decision and Jgmt. Entry at 10-11.)

{¶ 22} We have recognized that when assessing a contemnor's inability-to-pay defense, the trial court is in the best position to evaluate the contemnor's credibility. *See, e.g., Wehrle*, 2013-Ohio-81 at ¶ 45. Accordingly, on review of the record before us, we decline to substitute our judgment for that of the court below in this case.

{¶ 23} For all of these reasons, we conclude the trial court did not abuse its discretion in finding Mr. McCall is voluntarily unemployed, overruling his objections to the magistrate's decision, and entering a judgment approving and adopting the magistrate's decision enforcing the March 2021 administrative child support order and finding Mr. McCall in contempt. As such, we overrule his second assignment of error.

## III. CONCLUSION

{¶ 24} Having overruled Mr. McCall's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

DORRIAN and DINGUS, JJ., concur.