[Cite as *Doster v. Doster*, 2026-Ohio-303.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

CODY L. DOSTER,

 PLAINTIFF-APPELLEE,

   CASE NO. 12-24-08

 v.

ASHLEIGH M. DOSTER,

   OPINION AND
   JUDGMENT ENTRY

 DEFENDANT-APPELLANT.

Appeal from Putnam County Common Pleas Court
Domestic Division
Trial Court No. 2019 DIV 00080

Judgment Affirmed

Date of Decision: February 2, 2026

APPEARANCES:

 *Jeremy W. Levy* **for Appellant**

 *John R. Willamowski, Jr.* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Ashleigh Doster ("Ashleigh"), appeals the July 12, 2024 judgment of the Putnam County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm.

{¶2} Ashleigh and Cody Doster ("Cody") were married on January 7, 2016. Four minor children, two sets of twins, were born of the marriage – Knox (DOB: 2016), Jax (DOB: 2016), Axel (DOB: 2018), and Abel (DOB: 2018). On June 6, 2019, Cody filed a complaint for divorce with the Putnam County Court of Common Pleas, Domestic Relations Division. On July 8, 2019, Ashleigh answered the complaint and filed a counterclaim seeking a divorce from Cody.

{¶3} On October 1, 2020, the parties were granted a divorce on the grounds of incompatibility. At that time, the parties entered into a shared parenting plan. Under the terms of the shared parenting plan, Cody and Ashleigh enjoyed equal parenting time with the children.

{¶4} On September 28, 2023, Cody filed a motion to terminate the parties' shared parenting plan and to reallocate parental rights and responsibilities designating him as the sole residential parent and legal custodian.

{¶5} Cody also filed a number of motions for citations in contempt against Ashleigh in August and September 2023 citing, in relevant part, Ashleigh's failure to facilitate parenting time in July and October 2023 and failure to pay monetary sums in accordance with previous orders.

{¶6} Additionally, on October 12, 2023, Cody filed an ex parte motion seeking an immediate order designating him as the sole residential parent of the parties' minor children. In support, Cody cited Ashleigh's continuous denial of his parenting time with the youngest boys. On October 17, 2023, the trial court granted the ex parte motion and modified the parties' shared parenting plan and visitation schedule. The trial court ordered that Cody shall be the sole residential parent and custodian of the parties' minor children. The order granted Ashleigh visitation with the children on alternating weekends and telephonic or virtual visitation with the children on Wednesday evenings. On October 26, 2023, Ashleigh filed a motion for relief from the ex parte order. Ashleigh filed a motion to vacate the ex parte order on November 27, 2023.

{¶7} A hearing was held on May 8, 2024 and July 8, 2024 on the multiple pending contempt motions, Cody's motion to terminate the shared parenting plan, and Ashleigh's request[1] for a shared parenting plan.

{¶8} On July 12, 2024, the trial court issued findings of fact and a judgment entry finding Ashleigh in contempt and terminating the parties' shared parenting plan.[2] The trial court designated Cody as the residential parent and legal custodian of the parties' minor children.

---

[1] Ashleigh filed a proposed shared parenting plan on July 5, 2024.
[2] Ashleigh filed several motions on May 2, 2024 seeking to find Cody in contempt for (1) alleging failing to provide adequate medical and dental treatment for the children; (2) failing to exchange the children on December 22, 2023 in accordance with the court order; and (3) not permitting Ashleigh to speak on the phone with the children on October 18, 2023. However, in the July 12, 2024 judgment, the trial court denied those motions.

{¶9} On August 12, 2024, Ashleigh filed a notice of appeal. She raises three assignments of error for our review.

**First Assignment of Error**

**The trial court erred as a matter of law by terminating the parties' Shared Parenting Plan and designating Appellee the residential parent and legal custodian of the parties' minor children without conducting a best interest analysis pursuant to Ohio Rev. Code. Ann. § 3109.04.**

{¶10} In her first assignment of error, Ashleigh contends that the trial court erred by terminating the parties' shared parenting plan and designating Cody as the residential parent and custodian. Specifically, Ashleigh claims that the trial court failed to conduct a best-interest analysis of the children pursuant to R.C. 3109.04.

*Relevant Law*

{¶11} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 2014-Ohio-2577, ¶ 26 (3d Dist.), quoting *Walker v. Walker*, 2013-Ohio-1496, ¶ 46 (3d Dist.), citing *Wallace v. Willoughby*, 2011-Ohio-3008, ¶ 22 (3d Dist.) and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody." *Walker* at ¶ 46, citing *Barto v. Barto*, 2008-Ohio-5538, ¶ 25 (3d Dist.) and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} "R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child." *Bruns v. Green*, 2020-Ohio-4787, ¶ 8. The shared parenting plan in the present case was adopted pursuant to R.C. 3109.04(D)(1)(a)(i), which relates to situations in which "both parents jointly make the request in their pleading or jointly file the motion and also jointly file the plan." In such situations, "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." R.C. 3109.04(E)(2)(c). Here, Cody requested the termination of the shared parenting plan, and the trial court determined that the termination was proper.

{¶13} "[A] trial court is not required to find a change in circumstances, in addition to considering the best interest of the child, before terminating a shared parenting-plan and decree and designating one parent as the residential parent and legal custodian." *Bruns* at ¶ 21. When the trial court terminates the shared parenting plan, it "shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of [R.C. 3109.04] . . . as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d). This necessitates the trial court considering the best interest of the child and the factors delineated in R.C. 3109.04(F), which provides:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The person more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent

-6-

or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

In addition to the above, when the trial court is determining whether shared parenting is in the best interest of the child, the court "shall consider . . . all of the following factors:"

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem;

(3) When allocating parental rights and responsibilities for the care of children, the court shall not give preference to a parent because of that parent's financial status or condition.

R.C. 3109.04(F).

*Analysis*

{¶14} Ashleigh challenges the trial court's decision terminating the shared parenting plan and designating Cody the residential parent. She does not directly argue that the trial court's findings do not support the conclusion that the termination of the shared parenting plan is in the children's best interest; rather, she argues that, as a matter of law, the judgment must be reversed because the judgment entry did not explicitly reference the best interest factors.

{¶15} "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill v. Krill*, 2014-Ohio-2577, ¶ 29 (3d Dist.), quoting *Brammer v. Brammer*, 2013-Ohio-2843, ¶ 41 (3d Dist.). "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Id.* "[A]bsent evidence to the contrary, an appellate court will

presume the trial court considered all of the relevant 'best interest' factors listed in R.C. 3109.04(F)(1)." *Brammer v. Meachem*, 2011-Ohio-519, ¶ 32 (3d Dist.).

**{¶16}** Even though we find that although the trial court did not explicitly reference the best interest factors, we find that the judgment entry and findings of fact were guided by the best interest factors. For instance, the findings of facts reference the testimony regarding the communication challenges between the parents, the parents' inability to cooperate with each other, the relationships between the parents and the children, and in camera interviews the trial court conducted with the children. *See* R.C. 3109.04(F)(1)(c), (d), (e), (f). As an example, the trial court referenced the preschool director's testimony that Ashleigh "did not include father's contact information as an emergency contact" which directly relates to the best interest findings outlined in R.C. 3109.04(F)(1)(f).

**{¶17}** Furthermore, at the hearing, the trial court specifically referenced the "best interest" of the children on multiple occasions. (May 8, 2024 Tr. at 45, 63). From our review of the hearing transcript, it was obvious the trial court was well aware of the best interest standard and the statutory factors to be considered in making this determination.

**{¶18}** Moreover, the parties repeatedly referenced the best-interest factors. For instance, in response to an objection from the opposing party, Cody's attorney responded by stating, "[P]art of the best interest factors is the interpersonal relationships amongst the children to one another. Also would be [relevant] in terms

of the shared parenting factors, whether or not a parent has the ability to cooperate, and whether or not they have had prior issues with a contempt or denial of parenting time." (May 8, 2024 Tr. at 140). Importantly, a review of the record indicates that the trial court's findings were supported by competent, credible evidence. Accordingly, we reject Ashleigh's argument that the trial court did not consider the best interest factors when terminating the parties' shared parenting plan and designating Cody the residential parent.[3]

{¶19} Ashleigh's first assignment of error is overruled.

## Second Assignment of Error

**The trial court erred as a matter of law by finding Appellant in contempt for failing to facilitate Appellee's parenting time.**

{¶20} In her second assignment of error, Ashleigh argues that the trial court abused its discretion by finding her contempt for failing to facilitate parenting time. In her brief in support, Ashleigh contends that although Cody made a prima facie case for a finding of contempt, the trial court, nonetheless, should not have found her in contempt because it was impossible for her to comply with the court order.

*Standard of Review & Applicable Law*

{¶21} Ashleigh acknowledges that appellate courts review contempt orders for an abuse of discretion. *See also State ex rel. Adkins v. Sobb*, 39 Ohio St.3d 34,

---

[3] Although we find the trial court did consider the best interest factors of R.C. 3109.04(F), the better course is for a trial court to demonstrate its full compliance in considering statutory criteria by referencing the relevant statutory provision in its judgment entry and then ensuring consideration is clearly indicated as to the listed factors.

35 (1988); *Wilson v. Jones*, 2013-Ohio-4638, ¶ 11 (3d Dist.) ("[w]e will not reverse a finding of contempt by a trial court absent an abuse of discretion"). This is a "highly deferential standard of review." *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 29. A trial court abuses its discretion when its conduct is unreasonable, arbitrary, or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9.

{¶22} A court may hold a party in contempt for failing to comply with its order. *Zakany v. Zakany*, 9 Ohio St.3d 192, 193-194, 9 Ohio B. 505; *see also* R.C. 2705.02(A). "A person guilty of any of the following acts may be punished as for a contempt . . . [d]isobedience of, or resistance to, a lawful writ, order, rule, judgment, or command of a court or officer." R.C. 2705.02(A). A court has both inherent and statutory authority to punish contempt. *Id.*; *Zakany* at 193-194. Contempt of court by disobeying a court order constitutes "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus.

{¶23} "Intent to violate the court's order is not a necessary element of civil contempt." *Wilson* at ¶ 22. A movant's burden of proof for civil contempt is clear and convincing evidence. *Id.* at ¶ 25; *State ex rel. Doner v. Zehringer*, 2012-Ohio-5637, ¶ 3. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which

will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶24} The trial court found Ashleigh in contempt for denying Cody parenting time with the minor children on a number of occasions in July, August, and September 2023. In her appellate brief, Ashleigh admits that she denied Cody parenting time, accordingly, Cody made a prima facie case for a finding of contempt. Nonetheless, Ashleigh contends she should not have been found in contempt because providing the children to Cody was impossible.

{¶25} "'[G]enerally, impossibility of performance is a valid defense against a contempt charge.'" *Ruben v. Ruben*, 2013-Ohio-3924, ¶ 12, quoting *McDade v. McDade*, 1990 Ohio App. LEXIS 4280 (10th Dist. Sept. 27, 1990)." "For purposes of defending against a contempt charge, '"[a] party must take all reasonable steps within [his or] her power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why [he or] she is unable to comply with the court's order."'" *Pannell v. McCall*, 2025-Ohio-915, ¶ 14 (10th Dist.), quoting *Robinson v. Rummelhoff*, 2014-Ohio-1461, ¶ 35 (10th Dist.), quoting *Briggs v. Moelich*, 2012-Ohio-1049, ¶ 15 (8th Dist.).

{¶26} Here, Ashleigh asserts that it was impossible for her to comply with the trial court's order regarding visitation because the four-year-old twins did not

want to go to the visitation with Cody. Specifically, she references the testimony from law enforcement officers that, at least on one occasion the children ran into the house and did not come back outside. Ashleigh reasons that because the court order required the receiving parent to stay in their vehicle during the exchanges and the other parent to stay in their residence, that she was unable to force the children to go with Cody if they did not want to go and refused to leave her residence of their own accord. Ashleigh also references the testimony of Deputy Kevin Siefker ("Deputy Siefker") stating that he put in his report that Ashleigh told one of the children that he had to go with Cody.

{¶27} However, after reviewing the record, we do not find that Ashleigh presented sufficient evidence that it was impossible for her to comply with the court order. Notably, the testimony indicated that the children at issue were four years old at the time. For Ashleigh to allow such young children to control whether visitation with their father would occur, was for her to abdicate her parental responsibilities.

{¶28} Although Deputy Siefker, who was present at many of the visitations confirmed that, on one occasion, Ashleigh stated to one of the children that he had to go to the visitation, he could not recall if the statement was made more than once. Nor did Deputy Siefker observe any other attempts by Ashleigh to convince the children to go with their father. He specifically denied hearing Ashleigh instruct the children they would have a great time with their father and it would be fun. That

same deputy testified that he believed it was unnecessary for him to be present at the exchanges and recalled that, on several occasions, Ashleigh asked if he had his body camera on, which he perceived to be because Ashleigh wanted him to document the "theatrics" of the child throwing a fit every time there was an exchange for visitation. (May 8, 2023 Tr. at 182-183).

{¶29} Moreover, "[i]mpossibility of performance is not a valid defense where the contemnor created the impossibility by his own actions." *Ruben*, 2013-Ohio-3924, at ¶ 32. Here, several witnesses, including law enforcement officers, testified that Ashleigh spoke poorly of Cody in the children's presence, including making allegations of physical abuse by Cody that investigating officers determined to be unfounded. Furthermore, Deputy Siefker testified that a teenager was present at some of the exchanges and would make unnecessary comments that contributed to the younger boys' reluctance to visit their father and that Ashleigh did nothing to stop the teenage child from making such comments. Deputy Siefker testified that Ashleigh's "theatrics" and the teenage boys' behavior served to escalate the situation and make it worse. Accordingly, we do not find the trial court abused its discretion by finding Ashleigh in contempt.

{¶30} Ashleigh's second assignment of error is overruled.

**Third Assignment of Error**

**The performance of Appellant's trial counsel fell below the objective standard of reasonable representation and prejudiced the outcome of the proceedings.**

-14-

{¶31} In her third assignment of error, Ashleigh argues that her trial counsel's representation was ineffective. Specifically, she argues that her trial counsel failed to meet discovery deadlines and timely make trial disclosures. However, we need not address the merits of Ashleigh's argument.

{¶32} Ashleigh's argument fails because there is no right to an attorney in civil cases. "Accordingly, litigants are unable to attack civil judgments on the basis of ineffective assistance of counsel." *In re L.A.*, 2024-Ohio-1241, ¶ 12 (3d Dist.). "A complaint of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration . . . when the attorney was employed by a civil litigant." *Wolford v. Wolford*, 2009-Ohio-5459 ¶ 32 (4th Dist.). Although this court has applied the test for ineffective assistance of counsel in limited instances of natural parents involved in permanent custody or adoption proceedings, we have not extended it to proceedings involving parental custody disputes. *In re L.A.* at ¶ 12. (ineffective assistance of counsel does not apply to a legal custodian involved in a proceeding involving the visitation rights of the natural parents). *See Lopshire v. Lopshire*, 2008-Ohio-5946, ¶ 35 (11th Dist.) ("There is no constitutional right to counsel in a domestic relations matter.").

**{¶33}** Because child custody determinations between parents are civil proceedings, Ashleigh did not have a constitutional right to counsel and, accordingly, is not entitled to claim ineffective assistance of her retained counsel.

**{¶34}** Ashleigh's third assignment of error is overruled.

**{¶35}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Putnam County Court of Common Pleas, Domestic Relations Division.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

Case No. 12-24-08

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Mark C. Miller, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge

DATED:
/jlm

-17-