[Cite as *Prausa v. Prausa*, 2026-Ohio-1894.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| ROBERT PRAUSA | : |
| Appellant | : C.A. No. 2025-CA-58 |
| | : |
| | : Trial Court Case No. 2022 DR 0117 |
| v. | : |
| | : (Appeal from Common Pleas Court-|
| MICHELLE PRAUSA | : Domestic Relations) |
| | : |
| Appellee | : **FINAL JUDGMENT ENTRY &** |
| | : **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 22, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

MICHAEL L. TUCKER, JUDGE

EPLEY, J., and HUFFMAN, J., concur.

ROBERT PRAUSA, Appellant, Pro Se

MICHELLE M. MACIOROWSKI, Attorney for Appellee

TUCKER, J.

**{¶ 1}** Plaintiff-appellant Robert Prausa appeals from a judgment of the Greene County Court of Common Pleas, Division of Domestic Relations, that denied his motion to eliminate a military pension division order. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background

**{¶ 2}** Robert and Michelle Prausa were married in 1994. On June 13, 2022, Robert filed a complaint for divorce. A judgment and decree of divorce was filed on June 21, 2023. The terms of the decree, which was drafted by Robert's attorney, resulted from the parties' agreement. Relevant to this appeal, the decree stated:

The parties each have pensions. Husband is in payout status. The parties agree that Wife shall be entitled to approximately 43% of Husband's pension due to a portion of the retirement being earned prior to the parties' marriage. Wife is not in payout status but the parties agree that Husband is entitled to 50% of Wife's pension earned during the time of the marriage. Thus, the pensions shall be divided using September 24, 1994, as the beginning date of marriage and June 13, 2022, as the ending date of the marriage. The effective date of division shall be June 13, 2022.

. . .

A QDRO or DOPO shall be issued reflecting the agreement of the parties concerning the retirement accounts. The parties shall evenly split the

costs of executing any QDROs in regards to this Article. The Court retains jurisdiction with respect to the Qualified Domestic Relations Order (QDRO) to the extent required to maintain its qualified status and to enforce the original intent of the parties. The Court also retains jurisdiction to enter further orders as are necessary to enforce the assignment of benefits to the non-participant as set forth herein.[1]

{¶ 3} In November 2023, Michelle prepared a "Proposed Military Retired Pay Division Order" ("MRPDO") and submitted it to the court. Robert filed an objection to the proposed order, indicating that he would not agree to, or sign, the proposed order because it allowed cost of living adjustments ("COLA") to Michelle "concerning [Robert's] military retirement benefits." In the objection, Robert claimed the "final decree clearly indicates that [Michelle] was not awarded COLA increases regarding [Robert's] military retirement benefits." Michelle argued in response that relevant Federal law provided for such COLA increases because the decree awarded a percentage, rather than a dollar amount, of each party's pension to the other. The matter was set for a magistrate's hearing in May 2024. Following the hearing, the magistrate filed a decision finding that the parties intended COLA increases to be included in the division of the pensions. Robert filed a timely objection, which was later withdrawn. By judgment filed October 1, 2024, the trial court affirmed and adopted the magistrate's decision. No appeal was taken from this judgment.

{¶ 4} Thereafter, Michelle submitted another proposed MRPDO to Robert. After Robert failed to sign the order, Michelle filed it with the trial court. The order was signed by

---

1. The decree was later amended by agreed order to note that the terms QDRO and DOPO were not the appropriate designations for orders dividing Robert's military benefits or Michelle's federal employee pension benefits and that the decree should instead reference the appropriate type of orders for the division thereof.

3

Michelle, her attorney, and the trial court. The order indicated that the document had been "seen but not signed" by both Robert and his counsel. The order was filed on October 28, 2024.

{¶ 5} Robert filed a motion to set aside the MRPDO, claiming it impermissibly modified the decree. He argued that the MRPDO required him to pay Michelle her share of his pension payments beginning on June 13, 2022, the date set as the date of division in the decree. However, he argued that Michelle was not entitled to receive any portion of his pension until July 1, 2023, the first full month after the filing of the decree. In support, he argued that the June 13, 2022 date of division set forth by the language of the decree related solely to how Michelle's pension would be divided and that the date did not apply to the timing of payments for his benefits. He argued that such retroactive payments were not contemplated by the decree.

{¶ 6} The matter was set for a hearing that was conducted in May 2025. At the hearing, the parties stipulated that if the division date was June 13, 2022, Robert would owe Michelle $66,470.45 as of May 31, 2025, subject to any applicable credit/offsets for direct payments he made from November 2023 through December 2024. The parties further agreed that Robert would pay Michelle $2,905 per month from June 1, 2025, until such time as an MRPDO took effect. At the hearing, Robert asserted he should be credited for spousal support payments he made as they had been calculated based upon the entire amount of his military retirement. He also argued he should be credited for: (1) mortgage payments he made on the marital residence during the pendency of the divorce; (2) the amount of retirement benefits that were deposited into savings accounts during the divorce proceedings that were subsequently divided between the parties in the decree; and (3) for mischaracterizations of account balances set forth in the decree that benefited Michelle.

4

{¶ 7} Following the hearing, the magistrate determined the decree provided that both pensions were to be divided as of June 13, 2022, and that Michelle was thus entitled to payments beginning on that date. The magistrate further found the amount owed from that date until the date of the hearing was $66,470.45. The magistrate determined that amount should be reduced by $29,115, which represented the direct payments made by Robert to Michelle. The magistrate further reduced that amount by $13,685, which represented temporary spousal support paid by Robert. Finally, the magistrate ruled that Robert's remaining claims for offsets/credits were barred by res judicata.

{¶ 8} Michelle objected to the magistrate's decision on grounds that the magistrate had made a mathematical error by subtracting the direct payment sum of $29,115 from the amount of pension payments due. According to Michelle, that sum had already been subtracted from the amount of pension payments due to determine the stipulated sum of $66,479.45.

{¶ 9} The trial court found Michelle's objection well-taken and corrected the duplication error. The court otherwise adopted and affirmed the magistrate's decision.

{¶ 10} Robert, acting pro se, appeals.

## II. Failure to File Objections to Magistrate's Decision

{¶ 11} As an initial matter, we address Robert's failure to file objections to the June 2025 decision of the magistrate.

{¶ 12} Civ.R. 53(D)(3)(b)(iv) states:

Waiver of right to assign adoption by court as error on appeal.

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under

5

Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

{¶ 13} Because Robert failed to file objections to the magistrate's decision, he has waived all but plain error in the court's adoption of the decision. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Roemmich v. Roemmich*, 2008-Ohio-6047, ¶ 8-10 (2d Dist.), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, syllabus.

{¶ 14} Thus, we review Robert's assignments of error under the plain error standard.

### III. Res Judicata

Robert's first assignment of error states as follows:

The Trial Court Misapplied Res Judicata to Bar Review of Post-Decree Enforcement That Exceeded the Decree

{¶ 15} Although Robert's argument is somewhat difficult to discern, it appears that he claims the lower court erred by denying his assertion that the payments he made on the marital residence mortgage should be a credit/offset against any retroactive amount he owed Michelle as her share of his military pension benefits. He also contends that he should receive credit for a portion of his military pension payments that he claims were deposited into bank accounts that were subsequently equally divided between the parties. Finally, he claims the trial court should have considered "mischaracterizations of account balances set forth in the Decree that benefited Michelle." The trial court found these issues barred by the doctrine of res judicata. We agree.

6

**{¶ 16}** The doctrine of res judicata provides that a final judgment rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent actions on the same claims between the same parties or those in privity. *Brooks v. Kelly*, 2015-Ohio-2805, ¶ 7. The doctrine "encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.*, citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). "Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter." *Id.*, citing *Grava* at 382.

**{¶ 17}** Robert claims he should be credited for mortgage payments he made from November 2021 until July 5, 2022. From the record, it appears the parties began living separate and apart in October 2021 and that Michelle retained possession of the marital residence. The decree awarded the house to Michelle with the requirement that she be responsible for the mortgage indebtedness of $225,907.76. According to the record, Michelle agreed to waive her right to spousal support in exchange for Robert's agreement that the marital residence would be awarded to her.

**{¶ 18}** Robert's claimed mortgage payments ceased the month following the filing of his complaint for divorce. The parties entered into an agreement and signed the divorce decree on June 13, 2022, almost a year later. The decree, which constitutes a final judgment, did not mention any prior mortgage payments made by Robert or any claim that he had the right to the repayment thereof. Robert was certainly aware of any such payments

7

and of their omission from the terms of the decree that he signed. Therefore, it can reasonably be inferred that he voluntarily relinquished any claim for repayment of the mortgage payments as part of the parties' agreement, which was reduced to a final judgment and decree of divorce. Based on this record, the lower court correctly determined Robert's claim is barred by the doctrine of res judicata.

{¶ 19} Next, Robert claims that during the pendency of the divorce, his military pension benefits were deposited into marital bank accounts and subsequently divided equally between the parties. He claims that he is entitled to use those amounts as a credit or offset against any retroactive amount owed to Michelle. Again, Robert agreed to the division of the bank accounts with full knowledge of his claim that his military pension benefits had been deposited into the accounts. As with the mortgage payments, the decree does not mention of these alleged amounts, let alone assert a claim for repayment thereof. This issue is also barred by res judicata.

{¶ 20} Likewise, Robert's allegations that the decree contained "mischaracterizations" regarding the parties' bank accounts is not capable of resolution on this appeal. The record indicates the parties conducted discovery and there is no allegation that Robert did not have access to the accounts for the purpose of determining their correct balances. Any claim that he was somehow misled by Michelle should have been the subject of a Civ.R. 60 motion for relief from judgment. Simply put, the decree represents a final judgment regarding the accounts, and any argument to the contrary is barred by res judicata.

{¶ 21} Robert attempts to circumvent the doctrine of res judicata by arguing that the above-cited issues did not arise until the issues of COLA increases and retroactive pension payments were raised post-decree. He argues that because these "issues did not exist at the time of the decree, they could not have been litigated earlier, rendering res judicata

8

inapplicable as a matter of law." Based upon our foregoing analysis, we find this argument disingenuous and without merit.

{¶ 22} The first assignment of error is overruled.

### IV. COLA and Retroactive Pension Payments

{¶ 23} The second assignment of error provides as follows:

The Trial Court Impermissibly Modified a Final Property Division by Treating Silence as an Award

{¶ 24} In this assignment of error, Robert asserts that the court erred by including cost of living adjustments ("COLA") to the award of pension payments to Michelle and by requiring him to make retroactive payments on the pension award. In support, he contends that the decree was silent as to those issues and that the trial court's decision to include COLA and to require retroactive payments constitutes an impermissible modification of the decree.

{¶ 25} We begin with the COLA increases. As noted above, the magistrate held a hearing to resolve the parties' claims regarding the applicability of COLA to the division of the parties' pensions. Robert filed an objection to the magistrate's decision but withdrew it. The trial court then affirmed and adopted the decision of the magistrate, and Robert did not appeal. That judgment is final, and any argument otherwise is barred by res judicata.

{¶ 26} Additionally, we find no error, let alone plain error, related to the decision awarding Michelle a portion of Robert's pension as of the date of division set forth in the decree. The record demonstrates that the parties agreed to the inclusion of that date in the decree. As of that date, Robert's pension was in payout status and capable of being disbursed to both parties.

**{¶ 27}** Robert's claim that the division date related solely to the division of Michelle's pension is without merit as the decree expressly states" the *pensions* shall be divided using September 24, 1994, as the beginning date of marriage and June 13, 2022, as the ending date of the marriage. The effective date of division shall be June 13, 2022." (Emphasis added.). The use of the plural word "pensions" clearly expresses the intent that these dates apply to both pensions.

**{¶ 28}** The second assignment of error is overruled.

### V. Double Recovery on Pension Payments

**{¶ 29}** The third assignment of error asserted by Robert states:

The Trial Court Order an Impermissible Double Recovery

**{¶ 30}** In this assignment of error, Robert asserts that he was receiving his military pension during the pendency of the divorce, that those payments were deposited into marital accounts that were later divided as part of the agreed property settlement, and that given this, he was entitled to a credit for the pension payments he owed Michelle.

**{¶ 31}** This argument is rendered moot as it was addressed, and resolved, in the first assignment of error above. Accordingly, the third assignment of error is overruled.

### VI. Due Process

**{¶ 32}** The fourth assignment of error states as follows:

The Trial Court Denied Procedural Due Process by Enforcing Expanded Obligations Without Adjudicating Its Authority

**{¶ 33}** Robert claims that his "objections were dismissed without adjudication of whether the decree authorized the expanded obligations imposed through post-decree enforcement." Specifically, he claims he was denied the right to an adjudication of whether

10

"the decree authorized the retroactive and COLA-based obligations imposed through enforcement."

{¶ 34} We disagree. The issue of the COLA increases was set for a hearing before the magistrate. At the hearing, both parties waived an evidentiary hearing and instead agreed to permit the magistrate to decide the matter on the parties' briefs. The issue of the retroactive pension payments was the subject of a full hearing. Robert and his attorney were present at the hearing and had the opportunity to present evidence and question witnesses. Further, Robert had the opportunity to object to the magistrate's decisions on both matters, and he had the ability to appeal the trial court's judgments. Any claim that he was denied procedural due process lacks merit.

{¶ 35} Robert's reply brief asserts he was denied the effective assistance of counsel.[2] Specifically, he claims that he "was neither informed by prior counsel of the availability or timing of Civ.R. 60(B) relief, opportunities for objections (rather he dissuaded objections or simply asked do you want to object without offering any basis for arguments), nor of court correspondence requiring catch-up retirement payments. Without knowledge of the substantive impact or available procedural remedies, Appellant lacked a fair opportunity to object."

{¶ 36} "The purpose of a reply brief is to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time." *Cullinan v. Ohio Dept. of Job & Family Servs.*, 2016-Ohio-1083, ¶ 19 (10th Dist.). Therefore, we need not address this argument. Even if we were to consider it, we would find it without merit.

---

2. The record shows that Robert was represented by one attorney from the date of filing his complaint for divorce until the entry of the judgment and decree of divorce. He was represented by a different attorney during the post-decree proceedings.

11

**{¶ 37}** A claim of ineffective assistance of counsel is not cognizable in civil cases as "there is no right to an attorney in civil cases." *Doster v. Doster*, 2026-Ohio-303, ¶ 32 (3d Dist.). Thus, "litigants are unable to attack civil judgments on the basis of ineffective assistance of counsel." *In re L.A.*, 2024-Ohio-1241, ¶ 12 (3d Dist.). *See also Brunner Firm Co., L.P.A. v. Bussard*, 2008-Ohio-4684, ¶ 31 (10th Dist.) (observing that a claim of ineffective assistance of counsel is generally inapplicable in civil litigation).

**{¶ 38}** The fourth assignment of error is overruled.

### VII. Conclusion

**{¶ 39}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J., and HUFFMAN, J., concur.